Bele, J.
 

 The case was certified to this court by virtue of the provisions of Section 6, Article IY of the Constitution which reads in part as follows:
 

 * .» ail(j wiieneyer the judges of a Court of Appeals find that a judgment upon which they have agreed is in conflict with a judgment pronounced upon the same question by any other Court of Appeals of the state, the judges shall certify the record of the case to the Supreme Court for review and final determination.”
 

 The commission denied the claim of appellant for the reason that the decedent’s death was not the result of an injury sustained in the course of and arising out of decedent’s employment.
 

 That issue was the very heart of the case.
 

 The burden was upon the claimant to prove that the decedent’s death was the result of an injury sustained in the course of his employment, and as tending to prove that issue the claimant offered and the trial court admitted in evidence, over the objection of the commission, this question and answer:
 

 ‘ ‘ Q. Can you tell us what happened on that particular night? A. He came home when he was supposed to have come home, around 12:00 o’clock — his shift would have been off then — and when he came home, he had his key and he came upstairs — I never got up at any time — he came upstairs and he called me and he
 
 *449
 
 was throwing np and. I said, ‘What made you sick,’ and he said, ‘I got too much gas,’ and I said, ‘Did you have a doctor,’ and he said, ‘No. Colegrove told me to wait in his office,’ I guess it was, ‘until some of the fellows going down that way on that shift, would come home with me, ’ and he said he sat there and sat there and he threw up at different times, and he said his head hurt him so bad that he couldn’t sit there any longer and he started down home.”.
 

 This testimony was admitted under the doctrine of
 
 res gestae.
 

 The first question to be determined is whether the declaration made to appellant by her husband was admissible under the
 
 res gestae
 
 rule.
 

 The
 
 res gestae
 
 doctrine is an exception to the rule against hearsay.
 

 No hard and fast rule has been or could be formulated by which it could • be determined whether the declarations, exclamations or acts of a participant in or a witness to the transaction or event in question are admissible as part of the
 
 res gestae.
 
 In' each case it must be determined from the surrounding circumstances whether such declaration, exclamation or act is admissible.
 

 Certain well defined tests have been pointed out in the adjudicated cases and by the text writers as guides in determining the admissibility of such declarations.
 

 In the earlier cases it was held that to be admissible the declaration or exclamation must be contemporaneous in point of time with the incident, but this prerequisite has been relaxed in Ohio and most other jurisdictions.
 

 In 32 Corpus Juris Secundum, 45, Section 417,- it is said:
 

 “In order for a declaration to be admissible as part of the
 
 res gestae,
 
 it must be the spontaneous utterance of the mind while under the influence of the transaction or event.”
 

 
 *450
 
 And at page 49, Section 419, of the same volume:
 

 “A number of circumstances, such as the time elapsed, the condition of the declarant, the influence of intervening occurrences, and the nature and circumstances of the statement will be considered in determining its spontaneity.”
 

 6 Wigmore on Evidence (3 Ed.), 135, Section 1747 says:
 

 “This general principle [referring to the
 
 res gestae
 
 rule] is based on the experience, that, under certain external circumstances of physcial shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when consideration of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker’s belief as to the facts just observed by him; and may therefore be received as testimony to those facts.”
 

 In 17 Ohio Jurisprudence, 348, Section 278, under
 
 “Res Gestae,”
 
 this language is used:
 

 “In such case the language proceeds from impulse, from the natural and necessary impressions made by the acts of the parties in controversy, so that the human mind in its helplessness or dispair, or its natural and necessary anxiety, acts under an impulse or a spontaneous influence that is a sort of echo or reaction from the general situation.”
 

 At page 349, Section 279:
 

 “In Ohio the admissibility of declarations, excla
 
 *451
 
 mations, and statements under the
 
 res gesiae
 
 rule is determined not so much by considering whether they were made contemporaneous in the strict meaning of that word, with the transaction, as by determining the causal, logical, or psychological relation of such exclamations to the primary facts in controversy.”
 

 And at page 350, Section 280:
 

 ■ ‘ ‘ The rule laid down by the Supreme Court of Ohio is that the doctrine of
 
 res gestae
 
 as applied to exclamations should have its limits determined not by the strict meaning of the word ‘contemporaneous,’ but rather by the causal, logical, or psychological relation of such exclamations to the primary facts in controversy.” (See cases cited.)
 

 A discussion of the rule may be found in 1 Jones on Evidence (4 Ed.), 630, Section 344:
 

 “There is a sort of evidence, termed the
 
 ‘res gestae/
 
 which, forming an exception to the hearsay rule, is admitted notwithstanding the fact that it is hearsay. Literally, the expression
 
 ‘res gestae’
 
 signifies merely ‘transactions’ or ‘things done,’ but with reference to hearsay evidence it is rather loosely used to describe
 
 declaration,' exclamations,
 
 acts or conduct of a partiticipant in or witness of the principal transaction in suit, the statements or acts being such as tend to explain or illustrate the transaction which they accompany and with which they are substantially contemporaneous, and by the immediate influence of which they are generated. The
 
 spontaneity of the utterance
 
 and
 
 its logical connection with the principal event, coupled with the fact that the utterance was made while the declarant was still subject to the stimulus of the nervous excitement of the principal event,
 
 are deemed to preclude contrivance, deliberation, design or fabrication, and to give to the utterance an inherent guaranty of trustworthiness.” (Italics ours.)
 

 This court has considered and applied the rule on numerous occasions.
 

 
 *452
 
 In
 
 State
 
 v.
 
 Lasecki,
 
 90 Ohio St., 10, 106 N. E., 660, L. R. A. 1915E, 202, Ann. Cas. 1916C, 1182, paragraph three of the syllabus reads as follows :
 

 “The doctrine of
 
 res gestae,
 
 as applied to exclamations, should have its limits determined, not by the strict meaning of the word ‘contemporaneous,’ but rather by. the causal, logical or psychological relation of such exclamations with the primary facts in controversy.”
 

 In
 
 Bake
 
 v.
 
 Industrial Commission,
 
 135 Ohio St., 627, 22 N. E. (2d), 130, the court, speaking through Judge Matthias, said in the syllabus:
 

 ‘ ‘ The admissibility of a statement under the doctrine of
 
 res gestae
 
 depends upon its having been spontaneous or impulsive. It need not be strictly contemporaneous with the incident to which it relates, but should be in the nature of an exclamation and not a narrative of a past event.”
 

 In
 
 Dugan
 
 v.
 
 Industrial Commission,
 
 135 Ohio St., 652, 22 N. E. (2d), 132, this court said in paragraph one of the syllabus:
 

 .‘■‘A declaration or statement, to be admissible under the
 
 res gestae
 
 rule, is not required to be exactly coincident in point of time with the main fact to which it relates, but it must be spontaneous in character and not a mere narration of a past occurrence.”
 

 See, also,
 
 Cleveland Ry. Co.
 
 v.
 
 Merk,
 
 124 Ohio St., 596, 180 N. E., 51;
 
 Weaver
 
 v.
 
 Industrial Commission,
 
 125 Ohio St., 465, 181 N. E., 894;
 
 Coutellier
 
 v.
 
 Industrial Commission,
 
 126 Ohio St., 546, 186 N. E., 400.
 

 The record in the instant case discloses that on the night of November 26, 1936, decedent was placed at work setting up a gas producer. The machine upon which decedent was working was not in'operation but in close proximity thereto was another gas producer in operation.
 

 It is claimed that gas was escaping from the oper
 
 *453
 
 ating gas producer and that decedent inhaled some of the escaping gas which aggravated and accelerated an organic heart condition from which he was then suffering. Such aggravated and accelerated organic heart condition ultimately caused his death.
 

 The record does not disclose at what time the decedent went to work on that night setting up the gas producer; he quit work some time between 9 and 10 p. m. complaining of a headache; and he arrived home about midnight and no explanation was offered as to where he spent his time between his quitting work and midnight except as stated in the answer to the question heretofore set forth.
 

 The answer discloses that decedent when he arrived home called his wife and when she reached bim decedent was “throwing up”; she asked him the question “What made you sick,” to which he answered, “I got too much gas.”
 

 All of the statements by the decedent, as related by the witness, were made in response to questions put to him by her.
 

 Almost without exception the text writers and the cases agree that
 
 spontaneity
 
 of the declaration is essential to its admissibility. Measured by that test we think that the answers of the decedent to questions propounded by his wife wholly lacked that element of
 
 spontaneity,
 
 that his answers amounted only to the narration of a past transaction and were inadmissible as part of the
 
 res gestae,
 
 and that the Court of Appeals was correct in so holding.
 

 The second error related to giving the following instruction before argument:
 

 “You are hereby instructed that the death certificate herein admitted as an exhibit is
 
 prima facie
 
 evidence of all the facts therein contained, showing the fact, time and cause of death.
 

 
 *454
 

 “Prima facie
 
 evidence of any fact raises such a degree of probability in its favor that it must prevail if credited by the jury, unless it is rebutted or the contrary is proved by other testimony in the record of this case.”
 

 This charge was given under authority of Section 231, General Code, which read in part as follows:
 

 “The state registrar shall furnish any applicant therefor a certified copy of the record of a birth or death registered under provisions of this chapter relating to vital statistics, for which he shall receive a fee of fifty cents, from the applicant. Such copy, when properly certified by the state registrar to be a true copy thereof, shall be
 
 prima facie
 
 evidence in all courts and places.of the facts therein stated. * * *” (101 Ohio Laws, 332.)
 

 The Court of Appeals stated that the question was whether Section 231, General Code, was applicable on August 22, 1941, the date the commission denied the claim on rehearing; concluded that the statute was not applicable on that date; and held that the trial court erred in giving the special charge.
 

 The reasoning upon which that conclusion was based by the court may be briefly stated thus. Sections 209 and 231, General Code, were repealed on April 30, 3941; the action of the commission. on the application for rehearing was taken on August 22,1941; therefore the commission could not receive the death certificate and consider that document as
 
 prima facie
 
 evidence of the facts therein stated and if it could not be given that effect before the commission it could not be given that effect upon the trial upon appeal before a jury.
 

 To determine whether that conclusion was correct we revert to the statutes. Section 26, General Code, provides as follows:
 

 “Whenever a statute is repealed or amended,
 
 such repeal or amendment shall in no manner affect pending
 
 
 *455
 

 actions, prosecutions, or proceedings, civil or criminal,
 
 and when the repeal or amendment relates to the remedy, it shall not affect pending actions, prosecutions, or proceedings, unless so expressed, nor shall any repeal or amendment affect causes of such action, prosecution, or proceeding, existing at the time of such amendment or repeal, unless otherwise expressly provided in the amending or repealing act.” (Italics ours.)
 

 Sections 209 and 231, General Code, were repealed by an act of the General Assembly entitled an act “To establish in the department of health a state system of registration of births, deaths and other vital statistics, and to repeal Sections 197 to 234, both inclusive, * * * General Code, and to declare an emergency.”
 

 That act was passed as an emergency measure, was approved by the Governor on April 30, 1941, and filed in the office of the Secretary of State on May 1,1941.
 

 That act was silent as to pending actions, prosecutions or proceedings.
 

 It follows, therefore, that although Sections 209 and 231, General Code, had been repealed prior to August 22, 1941, the date upon which the commission ruled upon the application for rehearing, such repeal would have had no effect upon the competency of the death certificate or the legal effect to be given thereto, if the instant case was a pending proceeding on April 30, 1941, the date the repeal became effective.
 

 The record discloses that appellant filed her application for compensation with the commission on August 26,1939; on October 14,1940, the claim was disallowed; on October 23, 1940, an application for rehearing was filed and such rehearing was concluded on March 19, 1941; and as has been said the commission disallowed the claim on rehearing on August 22,1941.
 

 It should be noted that all the evidence on the rehearing was submitted and the record before the com
 
 *456
 
 mission was complete prior to the repeal of Sections 209 and 231, General Code.
 

 Does the filing of an application for compensation commence a proceeding within the meaning of Section 26, General Code?
 

 In the case of
 
 State, ex rel. Thompson,
 
 v.
 
 Industrial Commission of Ohio,
 
 138 Ohio St., 439, 35 N. E. (2d), 727, this court held:
 

 “The filing of an application for compensation constitutes the commencement of a proceeding and the subsequent filing therein of an application for modification of a former finding and order or for additional compensation is but a step in a proceeding that is pending within the meaning of Section 26, General Code. ’ ’ See, also,
 
 Industrial Commission
 
 v.
 
 Vail,
 
 110 Ohio St., 304, 143 N. E., 716;
 
 Kossick
 
 v.
 
 Sharon Steel Hoop Co., 113 Ohio
 
 St., 33, 148 N. E., 343;
 
 Industrial Commission
 
 v.
 
 Hilshorst,
 
 117 Ohio St., 337, 339, 158 N. E., 748; W.
 
 S. Tyler Co.
 
 v.
 
 Rebic,
 
 118 Ohio St., 522, 525, 161 N. E., 790;
 
 State, ex rel. Podley,
 
 v.
 
 Industrial Commission,
 
 127 Ohio St., 583, 584, 190 N. E., 407;
 
 Noggle
 
 v.
 
 Industrial Commission,
 
 129 Ohio St., 495, 498, 196 N. E., 377;
 
 State, ex rel. Longano,
 
 v.
 
 Industrial Commission,
 
 135 Ohio St., 165, 166, 20 N. E. (2d), 230.
 

 Applying the rule there announced to the instant case a proceeding was commenced on August 26, 1939, when appellant filed her application for compensation; this was almost two years prior to the repeal of Sections 209 and 231, General Code.
 

 We have no difficulty in concluding that the death certificate was admissible before the commission and on appeal in the Common Pleas Court, and was entitled to such weight and credence as was provided in Section 231, General Code.
 

 This brings us to the final question: What weight and credence was the death certificate, in the instant case, entitled to receive by virtue of the provisions of Section 231, General Code?
 

 
 *457
 
 As has been noted that section contains this language, “when properly certified by the state registrar to be a true copy thereof, shall be
 
 prima facie
 
 evidence in all courts and places of the facts therein stated. ’ ’
 

 The death certificate was signed by Dr. G. A. Gressle and contains the following questions and answers:
 

 . “Medical Certificate of Death
 

 “21. Date of Death (month, day, and year) 8-13, 1939. . . ;
 

 “22. I hereby certify, That I attended deceased from.............., 193.., to.............., 193.., I last saw h.. alive on. ..............., 193.., death is said to. have occurred on the date stated above at 6 p. m.
 

 ‘
 
 ‘ The principal cause of death and related causes of importance in order of onset were as follows:
 

 Date of onset
 

 Myocarditis
 

 Decompensation • years
 

 Enlarged Heart . year
 

 “Contributory causes of importance not related to principal cause:
 

 Dilatation of Heart 1938
 

 Pulmonary Hemorrhage 1937
 

 Overcome with gas 1937”
 

 Prior to the introduction of the death certificate in evidence the testimony of the doctor as to the death certificate is as follows:
 

 “Q. Doctor, you signed the death certificate, didn’t you? A. Yes.
 

 “Q. You give here as the principal cause of death what, Doctor? (Referring to death certificate) A. Myocarditis and decompensation and enlarged heart.
 

 “Q. Then the contributory cause of importance is what? A. That’s dilatation of the heart, due to pulmonary hemorrhage, being overcome with gas. That’s
 
 *458
 
 not my diagnosis there, that’s back before I saw this ■man; that was given to me by the attending physician.
 

 “Q. Who was the attending physician? A. Dr. Sapp. ‘Overcome with gas was in ’37’; ‘Pulmonary Hemorrhage was in ’37, ’ and the dilatation of the heart in ’38, and I never saw the patient, at that time, but those were reported by his attending physician
 

 “Q. ‘Specify whether injury occurred in industry, in home or in public place’; (Reading from death certificate) and what is your answer to that? A. That answer was his gas poisoning in 1937.
 

 “Q. That’s your signature? (Referring to signature on death certificate.)
 

 “Mr. Duffy: Now, at this place, Your Honor, we offer a certificate as Exhibit A into evidence, the death certificate of Carl Stough, who is said to have died in 1939, and it is signed by Dr. Gressle; and the exhibit ■was marked as Exhibit A and the certificate was offered in evidence, and I ask at this time to read that certificate into this evidence before this jury.
 

 “The Court: It may be admitted. You may read it.
 

 “Mr. Duffy: I will just pass it to the jury This is the death certificate of Carl Stough.
 

 “Mr. Conn: My objection is based on the ground that the statement as to the cause of death in the death certificate is hearsay.
 

 ‘ ‘ Mr. Duffy: I would like to state for the record that this testimony was taken November 28th, 1940, and that at that time the law, under General Code Section 231 was in effect, making a death certificate
 
 prima facie
 
 evidence of the facts therein contained, and that this General Code Section was never repealed until April of 1941. In other words, it speaks for itself. We ask that you take a look at the causes there on the death certificate.
 

 
 *459
 
 “And thereupon the death certificate above offered was admitted in evidence on behalf of the Plaintiff, and is hereto attached, marked Plaintiff’s Exhibit A and made a part hereof.”
 

 This testimony makes clear that the contributing causes of death as stated in the certificate by the doctor were not based upon his personal knowledge but were based upon
 
 hearsay.
 
 We are therefore confronted with the problem: Did the.General Assembly by the passage of Section 231, General Code, intend to provide that hearsay was to be admitted as
 
 prima facie
 
 evidence of facts if contained in a death certificate?
 

 A consideration of Section 231, General Code, together with other cogent sections then in effect leads to the conclusion that it was the legislative intent that before the statements of the doctor contained in a death certificate were to be admitted as
 
 prima facie
 
 evidence, such statements must be based upon the doctor’s personal knowledge and not upon hearsay information.
 

 • As we view the matter the trial court erred in not striking out those statements in the certificate which the testimony disclosed were based upon hearsay. If such statements were stricken out the charge of the court would have been proper, however upon the record as made the special charge was erroneous and prejudicial.
 

 It follows that the judgment of the Court of Appeals is correct, should be and hereby is affirmed.
 

 Judgment affirmed. .
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, Williams and Turner, JJ., concur.