**GLENN, Plaintiff-Appellee, v. NATIONAL SUPPLY COMPANY, Defendant-Appellant.**

Ohio Appeals, Second District, Clark County.

No. 513. Decided December 9, 1954.

T. Vincent Martin, R. N. Larrimer, Leander Zwick, Jr., Columbus, M. E. Spencer, Springfield, for plaintiff-appellee.

Cole & Cole, Springfield, for defendant-appellant.

## OPINION

By HORNBECK, J.:

The appeal is on questions of law from a judgment of the Court of Common Pleas of Clark County against defendant-appellant and in favor of plaintiff-appellee holding that she is entitled to participate in the Workmen's Compensation Fund, by reason of the death of her husband caused by an injury arising out of and occurring in the course of his employment with the defendant company.

The defendant is a self-insurer. The plaintiff's decedent was in his life-time and prior to February 15, 1948 in the employ of defendant-company. About that time he left the employ of the company and it is the claim of the plaintiff that he received an injury on or about the last day of his employment caused by being struck by a heavy mold suspended from a crane in the factory of defendant company. It was the claim of the plaintiff that the death of her decedent proximately resulted from cancer of the right lobe of the lung, technically known as bronchogenic carcinoma, and that the course of this disease was accelerated by his injury when struck by the mold. The defendant denied that the plaintiff's decedent received any injury, as asserted, and denied that he died as a result of the injury pleaded and denied that the progress of the cancer was accelerated by his injury.

The verdict was general and was not tested by interrogatories.

Appellant assigns eight grounds of error: One, in permitting Doctor Cooley to give an opinion whether his diagnosis was confirmed by certain

conclusions in the death certificate. Two, in permitting the death certificate to be used for purposes other than those purposes for which it was offered. Three, and Four, in permitting Doctor Rusoff and Doctor Mark to answer hypothetical questions propounded to them and to explain their answers. Five, that the trial-judge erred in failing properly to charge as to the proper weight to be given to the opinion evidence of the physicians. Six, the trial-judge erred in his charge to the jury as to "acceleration." Seven, the court erred in refusing to grant defendant's motion for a directed verdict at the conclusion of the case. And eight, that the verdict and judgment are not sustained by sufficient evidence and are contrary to law.

The first and second assignments may be considered together. It is urged that it was error to permit the admission of the death certificate showing the cause of death of plaintiff's decedent and the duration of his illness. It is urged that the presence of cancer may be determined only by microscopic examination of its structure and that as such was not made, the statement of the physician in the death certificate as to the cause of death is nothing more than an opinion. Clearly, this is true, but it is an expert opinion based upon probability and one that is permitted to be given as a part of the death certificate. We cannot say that it is not within legislative power to authorize such opinions to be stated and to give them the status of prima facie evidence in support of the fact of death and of the duration of the illness.

The chapter on Vital Statistics including §3705.02 R. C., authorizes and directs the Director of Health to prescribe forms and blanks for obtaining registration of deaths and other vital statistics. Pursuant to this authority, the Director has prescribed forms and the Certificates of Death manifestly is one of them. In this form the Director calls for the information, as to the duration of the last illness of the one who has died as well as the cause of death. Sec. 3705.05 R. C., expressly provides that "such certified copy of such original certificate of * * * death, * * * shall be prima facie evidence in all courts and places of the facts therein stated."

We would not hold that all statements that might appear in a Death Certificate were competent or evidential. However, the information based on proper professional knowledge which is called for by the Director in forms prescribed by him would be such "facts" as are contemplated in the foregoing quoted provision of §3705.05 R. C.

Our Supreme Court in Stough v. Industrial Commission, 142 Oh St 446, has held that the Death Certificate provided for in the Code is admissible as prima facie evidence of facts therein stated if such facts were based upon personal knowledge of parties stating them; and that "such statute did not create an exception to rule against heresay" and had no application to any facts stated in such certificate which was based upon hearsay. There is no showing that the statement of the doctor in the Death Certificate as to the cause of death was hearsay. Manifestly, it was not. Nor does it appear that knowledge of the duration of the illness was elecited by hearsay.

Appellant cites Carson v. Metropolitan Life Insurance Co., 156 Oh St 104, wherein it was held not only that certified copies of original Certificates of Death are prima faccie evidence of the facts therein stated, but that mere

opinions or conclusions do not constitute facts and are not admissible in evidence. The facts upon which this last pronouncement was made arose because certain exhibits stated not only the information which was required to be given, but expressed the opinion that the gun shot which caused the death of appellant, Carson, was inflicted with suicidal intent. The court held that the mere expression of a coroner or a physician that a decedent committed suicide without some evidence to support it was a mere opinion and did not constitute a fact as contemplated by the provisions of the applicable statutes. Judge Putnam in the opinion in Rath v. Industrial Commission No. 794 Court of Appeals, Muskingum County, cited by appellee, discusses and differentiates the observation of a physician as to death being caused by suicide and statements of the cause of death which come within the range of the expert knowledge of a physician. We believe that Judge Putnam's analysis is sound. We adopt but will not restate it.

The effect of the Death Certificate is only to make prima facie proof of the facts therein stated. The field is open for any other testimony which may tend to disprove any or all of the subject matter of the certificate. If such testimony is forthcoming, as it was here. it need only equal the prima facie case to overcome its probative effect. The weight of this countervailing evidence is, of course, for the jury.

The second assignment is directed to the permission by the court of an expert, Dr. Cooley, to testify that his diagnosis conformed to the statement of the cause of death as found in the Certificate. We find no error in the admission of such testimony. It was nothing more than a statement of an obvious fact and could not have been prejudicial.

The third and fourth assignments are directed to the admission by the court of answers to certain hypothetical questions which were put to Doctors Russof and Mark. It is urged that the questions were objectionable because they contained improper hypothesis not supported by proof. One of the assumptions in the question was that the cancer had existed for sixteen months. It is urged that this assumption is not warranted. We cannot so hold because it is stated in the Death Certificate and is prima facie proof of that fact.

It is also urged that there was variation as to the continuity of a mark or a welt on the left chest and that the assumption was made that the blow left a mark on the left chest whereas Doctor Russof found that it was on the right chest.

Upon the developments we do not believe that all of these variations occur such as did were not so material as to affect the answers especially as to the location of the blow, inasmuch as Doctor Mark testified that whether or not it was on the left or right side of the chest would not materially affect his diagnosis. Upon the whole record there is little if any doubt that the blow was to the left chest and this fact was so accepted in the hypothetical question. The similarity in the hypotheses in the questions put by counsel for both parties is marked.

It is insisted that the witnesses could not testify as to the effect of the blow which it is testified decedent suffered without knowing the force of the blow. Although Doctor Mark testified that the force was not controlling

if it was sufficient to cause a disturbance in the area of the blow, there was some testimony tending to show that the blow was of considerable force. It was shown what instrument struck decedent, its construction, how operated, that it weighed from 600 to 800 pounds, the circumstances under which the accident occurred, its effect and the marks that it left on the chest and the ministration of plaintiff to ease the pain.

An examination of the record is convincing that there was testimony tending to establish every hypothesis carried into the question propounded to the experts. It is immaterial though they may have included certain facts contrary to those testified by the doctor to whom the question was put.

The sixth assignment is that the court erred in its charge as to the effect of "acceleration" and what was essential to support a recovery upon that theory. That the Court did not say to the jury that it was incumbent upon plainiff to prove that the injury which her decedent suffered, if it found that he was so injured, must have proximately or directly accelerated the progress of the disease from which he was already suffering and his death.

We are mindful of the holding in **Cleveland Ry. Co. v. Karbole, 125 Oh St 466** that the trial-judge erred in refusing to give the following special charge requested before argument:

"Not only must the injury arise out of and be connected with the employment, but that the death must appear to be the proximate result of the injury, or if there was acceleration of death, that acceleration must be the proximate result of the injury."

The trial-judge did not charge the jury in the above language, nor was he requested to do so before argument or at the conclusion of the general charge. We would hesitate to say that, even though the charge was not technically correct, appellant could take advantage of the fact in view of developments. After the Court had charged the jury he inquired— Gentlemen: "Is there anything further you wish the jury instructed upon?" Conversation ensued. Mr. Cole: "You used the word in your charge several times, 'accelerate.' Now, you didn't at any time say 'substantially accelerate' or 'materially accelerate.'" Some discussion arose between counsel and the Court then proposed to charge further on the subject, and said, "Well, I think I know what you have in mind and I think you probably could have worded it in a way that I would, perhaps had to instruct them." Finally, counsel withdrew his request. That the Court would have refused to charge, as requested, does not appear.

To avoid the commission of error in a trial when it occurs and to give the Court every opportunity to correct it at once is well recognized as an obligation of counsel. 3 O. Jur. 2d 40. Counsel noted a general exception to the charge. That this is insufficient to reach the error, if any, see First Syllabus, **State v. Tudor, 154 Oh St 249.**

We are not prepared to say that the Court did not properly charge on the subject of acceleration. In several places in the charge he treated the matter. Typical of the charge, he said to the jury.

"Under the pleadings and evidence in this case, there are only two issues or questions of fact for the jury to determine and they are: (1) * * * (2) Whether or not such injury sustained by the deceased, Edward

Glenn, if you find he did sustain such an injury, was or was not the proximate cause or direct contributing cause of his death, or caused an acceleration of his death."

The Court properly charged what constituted the direct or proximate cause as distinguished from the indirect or remote cause.

It is our opinion that the trial judge spoke of a "direct contributing cause of death" as synonymous with, or "caused an acceleration of his death." That is to say, that if there was an acceleration of death by reason of the injury, it must have been a direct contributing cause of death., One of the two principle issues was whether or not the injury was a direct contributing cause of death by accelerating the progress of the disease which caused the death.

The probability of any misinterpretation of the charge is remote, in view of the fact that the evidence was clear out for and against the contention that the disease from which the plaintiff died was proximately accelerated by the injury which decedent suffered. The experts for the plaintiff testified, without qualification, that there was direct causal relation between the progress of the disease resulting in death and the blow which decedent suffered. Dr. Mark said that "where bronchogenic carcinoma is present and trauma occurs, rapid metastasis occurs, and in this case apparently a lump formation in the left breast area occurred and hastened death by considerable time." The expert for the defendant took a contrary view and said that there was not, and could not be any connection between the disease which caused death and the injury which decedent suffered. Doctor Skavlem testified that the theory that trauma produces cancer and particularly the "contra coup" theory, that a blow on the left chest would aggravate or accelerate the cancer in the right bronchial area was unsound and could not be accepted. In view of the direct and irreconcilable conflict in the testimony inasmuch as the jury found that the injury occurred with the resultant effect as testified by plaintiff's doctors, it would not have been mislead by the charge because the verdict responded to the one and only theory advanced by plaintiff.

The error which we have just discussed is the most substantial of any urged but upon testing it fully, we cannot hold that the Court erred in the instruction as given or, if he did, that it resulted in prejudice to the defendant requiring a reversal of the judgment.

The seventh and eighth assignments are that the court erred in not directing a verdict in behalf of the defendant and that the verdict and judgment are contraryy to and against the manifest weight of the evidence.

We are fully aware, as counsel and the trial-judge must have been, that this is an unusual case. The claim of plaintiff is novel and its proof rested, in the main, on circumstances and particularly upon expert testimony. The experts were of the highest professional standing. Proof of any essential to recovery must come from the best evidence available. Plaintiff started with a heavy handicap which her evidence had to overcome. Whether or not she did so presents an issue of fact which was the responsibility of the jury to resolve. The case was well tried and the jury properly instructed. There were two material controverted facts as to either or both of which the jury could have reached a different con-

clusion. A careful reading of this record in its entirety is convincing that we may not set the judgment and verdict aside, either as being contrary to law or against the manifest weight of the evidence without invading the province of the jury. We find no error assigned well made.

The judgment will be affirmed.

WISEMAN, PJ, MILLER, J, concur.