Taft, J.
The evidence in the instant case shows without dispute that the mother, since a time substantially prior to the time of conception of the child, was a nonresident of Ohio; that the child was begotten, conceived and born in New York City and was in Ohio only for the trials in the instant proceeding; and that defendant at all times since substantially prior to the time of the child’s conception has been a resident of and domiciled in Lake County, Ohio.
Defendant first contends that the Common Pleas Court erred in assuming jurisdiction over the subject of this action. In support of that contention, defendant in effect argues that a bastardy action is a civil action for a tort (State, ex rel. Gill, *167 v. Volz, 156 Ohio St., 60, 100 N. E. [2d], 203), that the law of the place of an alleged wrong determines whether there can be a cause of action in tort on account of such alleged wrong (Alexander v. Pennsylvania Co., 48 Ohio St., 623, 30 N. E., 69; Collins, a Minor, v. McClure, 143 Ohio St., 569, 56 N. E. [2d], 171; 15 Corpus Juris Secundum, 896, 897, Section 12; 2 Beale, Conflict of Laws, 1288 et seq., Sections 378.1, 378.2 and 378.4; Restatement of the Law of Torts, Section 378), that there can be no recovery in tort under the law in force in New York City by or on behalf of either a bastard child or its mother against the father of such child for or based upon his participation in originating the child, and that therefore, since this child was admittedly begotten, conceived and born in New York City, there can be no recovery against the father in Ohio.
Because of these arguments, we allowed defendant’s motion to certify so that we might reconsider the soundness of the decision of the Supreme Court Commission in McGary v. Bevington, 41 Ohio St., 280.
In view of that decision and of the conclusion which we have reached, we do not believe it necessary to consider whether, as defendant states, there can be no recovery in tort under the law in force in New York City by or on behalf of either a bastard child or its mother against the father of such child for his participation in the origination of such child. For the purposes of this opinion, we will assume that the law applicable in New York City is as so stated by defendant.
In McGary v. Bevington, supra (41 Ohio St., 280), the syllabus reads:
‘ ‘ A proceeding in bastardy may be maintained in this state under Chapter 3, Title 1, Division 7, Revised Statutes, by an’ unmarried woman, the mother of a bastard child, notwithstanding the child was begotten and born in another state, and the mother and child never were residents of Ohio.”
Thus, it was held that, by the use of language substantially similar to the language found in our present bastardy statutes, our General Assembly intended to provide for a cause of action against the father of a bastard child even where the mother and child were nonresidents of Ohio and the child was begotten, conceived and born outside Ohio. Furthermore, neither *168 the syllabus nor the opinion indicates that the court regarded the law of the place where the child was begotten and born and where it lived with its mother as being of any significance whatever in determining the existence of such a cause of action.
Both parties in the instant case concede that the instant case was instituted under the Ohio bastardy statutes. Thus, the existence of the cause of action asserted depends upon those statutes.
The authorities referred to by defendant in support of his argument, that the law of the place of an alleged wrong determines whether there can be a cause of action in tort on account of such alleged wrong, do not necessarily require the conclusion that the statutory law of the forum may not provide for or create a cause of action, which may be based upon something done beyond its borders as well as something done within its borders. Although the opinion in the McGary case did not purport to answer any argument that the General Assembly could not so provide, the report of the case indicates that such an argument was made. The decision there rendered necessarily rejects that argument, which is well stated in the report at page 281 as follows:
“* * * what right has the state of Ohio to require a bond for the benefit of itself for an act committed in a foreign state, relating to a resident of a foreign state, who always had lived and still is living in that foreign state? The interest of the state of Ohio in the matter is absolutely nothing.”
It is probably sufficient to state that Ohio may well be interested in providing not only for the filiation (i. e., determination of the identity of the father) and maintenance of any illegitimate child (regardless of its location or the place where it was begotten, conceived or born) of any man found within its borders, but also for some of the expenses of the mother caused by such man’s participation in the origination of the child. The General Assembly could have believed that the absence of such legislation would encourage such a man to seek refuge in Ohio from obligations which the General Assembly probably believed should rest upon him; and the General Assembly may therefore have regarded it as of interest to Ohio to avoid having *169 this state become a refuge for those fathers of bastard children, who were seeking to avoid such obligations.
In 7 American Jurisprudence, 683, Section 85, it is said:
“Statutes giving the right to maintain bastardy proceedings sometimes expressly provide that the proceedings shall be brought by a woman resident within the state. Other statutes do not expressly limit the right to resident women, and the question has often arisen whether such a statute may be invoked where, although the father is domiciled in the jurisdiction, the mother and child are nonresidents. There are two views of this question, each well supported by authority: (1) That the purpose of the statute is to secure the maintenance of illegitimate children liable to become paupers in the state, and hence that it does not apply to the illegitimate children of nonresident mothers, and (2) that the statute converts an existing moral obligation of the father into a legal obligation, enforceable like any other legal obligation upon the obligor if within the jurisdiction. The better view seems to be the latter, the bastardy proceedings being considered transitory in their nature, and the father subject to suit in the county of his residence. A sound reason for this view is that if the rule were otherwise, there might be no remedy where the father took care to cross state lines at the proper time or where the complainant and her child were, by force of circumstances, compelled to reside outside the state.”
In Restatement of the law of Conflict of Laws, Section 455, it is said:
“A statute of the state of domicile of the father of a minor bastard child will be there applied to compel him to contribute to the support of the child, irrespective of where the mother is domiciled, unless the statute provides otherwise.”
In the comment under that section it is stated:
“Rationale. Whether a bastardy statute is criminal or civil in nature, it represents the exercise of the state’s police power either to punish misconduct or to impose the onus of supporting a child upon its natural parent to prevent the child becoming a dependent upon society. Therefore, the state of domicile of the father of a minor bastard child has legislative jurisdiction *170 to provide for the imposition upon him of the duty to support the child or to contribute to its support, whether the child was born within the state or whether the mother of the child or neither is domiciled there. ’ ’
In 2 Beale, Conflict of Laws, 1431, Section 454.1, it is said: “The prevailing doctrine * * * permits suit to be brought against the father at his residence though the child was begotten and born and the mother is resident in another state.
“* * * the prevailing rule is the sound one.”
In 10 Corpus Juris Secundum, 144, 145, Sections 32, 34 and 35, it is stated:
“Bastardy proceedings are purely statutory * * *. “Usually, under the statutes, the place of the birth, or of the begetting, of the child is immaterial. * # *
“Where not required by statute, the residence of the mother of the child within the jurisdiction is generally not a condition precedent to the institution of bastardy proceedings, and this is particularly true where the statute providing for such proceedings was enacted for the purpose of converting the existing moral obligation of the father into a legal obligation, enforceable, like any other legal obligation, on the obligor if within the jurisdiction, or enacted in the interests of the child, in order to secure its support and maintenance.”
See also Berkeley v. Berkeley (Mo.), 246 S. W. (2d), 804, 34 A. L. R. (2d), 1456, with respect to the analogous problem of the jurisdiction of the state of domicile of a father to impose upon him an obligation to support a nonresident child.
In our opinion, the decision in McGary v. Bevington, supra (41 Ohio St., 280), is supported by reason and authority, should therefore be followed, and requires our rejection of defendant’s first contention.
Defendant further contends that the trial court erred in failing to instruct the jury on the law applicable in New York City. This contention is based upon the premise that, because the child was begotten, conceived and born in New York City, that was the locus delicti.
It is probably fair to say that there is no locus delicti with respect to a bastard child. No matter where a bastard child was begotten, conceived or born, or is, it is still the child of its *171 father in whatever location the father may be found; and a moral obligation may reasonably be found to rest upon that father wherever he may be to recognize that relationship and to provide for the support of the child and for the expenses of the mother in producing and maintaining the child. Certainly, a state where such father is found can reasonably have an interest in imposing upon such father a legal obligation corresponding with that moral obligation.
In any event, this is not an action in one state to enforce a cause of action recognized by the law of another state for something done in that other state. As hereinbefore pointed out, this is an action in Ohio to enforce a cause of action provided for and created by the Ohio bastardy statutes. Under those statutes, that cause of action is not made in any way dependent upon the law outside Ohio, even though the child involved may have been begotten, conceived and born outside Ohio and never been in Ohio. Hence the law applicable in New York City was not pertinent to the matter submitted to the jury for consideration in the instant proceeding.
Defendant contends that the trial court, after the first trial and before the jury trial in the instant case, erred in granting the motion for a new trial on the ground of newly discovered evidence. As hereinbefore indicated in the statement of this case, the record discloses that the new trial was not granted on that ground but was granted for other reasons. Furthermore, the time for appeal from the order granting that new trial expired long before institution of the appeal to the Court of Appeals in the instant case. If that order was reviewable on appeal, an appeal should have been instituted by filing a notice of appeal therefrom within the time specified in Section 12223-7, General Code (Section 2505.07, Revised Code).
Defendant further contends that the trial court improperly admitted the birth certificate of the child. The record discloses that objection to the admission of this certificate was made “because under the laws of New York this will show evidence which is not allowed on birth certificates.” In support of this ground of objection, reference was made to a New York statute providing that “the name of the putative father of a child born out of wedlock shall not be entered on the certificate of birth *172 without the putative father’s consent in writing duly verified by him.” It appears that defendant’s name was entered on the certificate as the father of the child; and there was no showing of defendant’s consent in writing to any such entry.
If part of a document contains information not admissible in evidence, that does not prevent admission in evidence of other parts of the document which are admissible (see 1 Wigmore on Evidence [3 Ed.], 300, 301, Section 13; 20 American Jurisprudence, 252, Section 263), especially where, as in the instant case, the inadmissible parts of the document can be so covered up or cut out as to prevent the jury from seeing them. This certificate would be some evidence with respect to such relevant matters as to whether the child was born, whether complainant was the mother, and the date of birth. The objection did not suggest that the part of the certificate containing information relating to such matters was not admissible. If part of the certificate was not admissible, defendant should have requested the trial court to exclude or instruct the jury to disregard that part instead of merely objecting to the admission of the whole document. As stated by Stewart, J., in the opinion in Carson v. Metropolitan Life Ins. Co., 156 Ohio St., 104, 111, 100 N. E. (2d), 197, 18 A. L. R. (2d), 344:
“Ordinarily, where evidence is received and a part of it is admissible and a part inadmissible, a general objection to its reception is not sufficient to save the question of the inadmissibility of the objectionable part. To save the objector’s rights, he should clearly indicate the part of the evidence to which he objects and move its exclusion(Emphasis added.)
In 1 Wigmore on Evidence (3 Ed.), 301, Section 13, it is said:
“ * * * the only question can be what the proper means are for avoiding the risk of misusing the evidence. It is uniformly conceded that the instruction of the court suffices for that purpose ; and the better opinion is that the opponent of the evidence must ask for that instruction; otherwise, he may be supposed to have waived it as unnecessary for his protection.”
See also Insurance Co. v. Schmidt, 40 Ohio St., 112; Stough v. Industrial Commission, 142 Ohio St., 446, 459, 52 N. E. (2d), 992.
*173 As to defendant’s contention that the certificate was not properly authenticated, defendant did not state that as a ground for his objection, but instead, as hereinbefore pointed out, specified another ground for that objection. It is elementary that, where a party advances certain grounds for an objection to admission of evidence, or, when asked by the trial court to state the ground of his objection, specifies certain grounds, such party will be held to have waived all grounds for the objection other than those so advanced or specified. 1 Wigmore on Evidence (3 Ed.), 339, Section 18. This represents an application of the broad principle that, in the absence of a statute providing otherwise, a party cannot rely upon an error in the trial which could have been prevented by the trial judge if such party had requested the trial judge to do so. See State v. Tudor, 154 Ohio St., 249, 257, 258, 95 N. E. (2d), 385. There is no such statute which would prevent the application of this broad principle in this instance. See Rhoades v. City of Cleveland, 157 Ohio St., 107, 109, 105 N. E. (2d), 2.
Finally defendant complains with respect to the failure of the mother to introduce the transcript of the preliminary hearing as a part of her case in chief. Although this may have been required under the provisions of former Section 12122, General Code, the requirements of that section with respect thereto were omitted by the General Assembly from Section 8006-15, General Code (now Section 3111.15, Revised Code), which replaced Section 12122, General Code, when the bastardy statutes were revised by the General Assembly effective August 28, 1951. That requirement was therefore no longer in the law at any of the times involved in the instant proceeding.

Judgment affirmed.

Weygandt, C. J., Matthias, Hart, Zimmerman, Stewart and Bell, JJ., concur.