BERGFELD, ADMX., APPELLEE, *v.* NEW YORK, CHICAGO & ST. LOUIS RD. CO., APPELLANT.*

*Motion to certify the record overruled, May 1, 1957.

(No. 194—Decided December 28, 1956.)

Mr. *James H. Clark* and Mr. *Samuel T. Gaines,* for appellee.

Mr. *Kerns Wright* and *Messrs. Williams, Eversman & Black,* for appellant.

MIDDLETON, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas against the defendant, appellant herein, and in favor of plaintiff, appellee herein.

Plaintiff's action was brought as administratrix to recover damages for the alleged wrongful death of Claude A. Bergfeld, allegedly caused by the negligence of defendant.

Defendant's answer denies negligence and, as a second defense, pleads contributory negligence of plaintiff's decedent.

Trial resulted in a verdict for the plaintiff of $25,125, and judgment was rendered, with interest, upon the verdict. From that judgment, appeal is prosecuted.

The amended petition avers that the direct cause of the death of plaintiff's decedent was the negligent and careless conduct of defendant in the following respects, to wit, in that the defendant:

"1. After the cars theretofore brought in on train 96 had been put on tracks 2, 3, 4 and 6 in conformity with its established pattern in making up the Toledo-bound train, and before such train had been made up, at a time when it was aware or in the exercise of due care should and ought to have been aware of the uncommon darkness in the vicinity of track 1 where plaintiff's decedent was working and decedent's physical characteristics, his comparative inexperience and his knowledge of defendant's practice, upon which said decedent relied and had a right to rely, that the AC&Y-destined cars would generally

and customarily be left on track 1 and no such cars would thereafter be kicked in a southerly direction down track 1 without warning while the Toledo-bound train was being made up, did kick an AC&Y-destined car in a southerly direction on track 1 without warning and at a time when defendant, in conformity with good railroad practice, could and should have kept such car in the clear while making up the Toledo-bound train and thereafter moved it without danger to plaintiff's decedent.

"2. Moved a car within yard limits over the rails of track 1 at a speed which did not permit stopping of such car within one-half the range of vision, in violation of rule of the defendant defining yard speed as a speed that will permit stopping within one-half the range of vision.

"3. Failed to maintain a lookout for the presence of plaintiff's decedent.

"4. Failed to replace or render operative the light which would have served to illuminate that portion of the yards in the vicinity where decedent was required to be in the performance of his duties as in the exercise of due care it should and could have done after defendant knew, or in the exercise of due care should and ought to have known, that said light was inoperative and unlit, as a result whereof such area was dark and dangerous.

"5. Failed to provide clearance between tracks 1 and 2 which was adequate and reasonably safe.

"6. [Was] well aware of decedent's physical characteristics, the nature of his many years of work of a sedentary character as an office clerk and his inexperience as a yard clerk, assigned him to perform the duties of a yard clerk under circumstances and conditions fraught with great and uncommon danger to him."

The defendant submitted to the court six interrogatories to be answered by the jury in the event it rendered a general verdict. Those interrogatories are as follows:

"Question No. 1. Was the defendant guilty of negligence which proximately caused the death of Claude A. Bergfeld?

"Question No. 2. If your answer to question No. 1 is 'yes,' state of what that negligence consisted.

"Question No. 3. If your answer to question No. 1 is 'yes,'

state the total amount of damages sustained by Helen Caroline Bergfeld by reason of the death of Claude A. Bergfeld.

"Question No. 4. Was Claude A. Bergfeld guilty of negligence which proximately caused or contributed to his death?

"Question No. 5. If your answer to question No. 3 is 'yes,' state of what that negligence consisted.

"Question No. 6. If your answer to question No. 1 is 'yes,' and your answer to question No. 4 is 'yes,' then state the proportionate amount of negligence which was attributable to the defendant."

Plaintiff objected to each of the interrogatories, and the court sustained the objections to numbers 4, 5 and 6 and gave numbers 1, 2 and 3.

Defendant also submitted to the court six special requests to charge before argument, as follows:

"Special Request No. 1:

"It is claimed in this case that the defendant was negligent in failing to replace or render operative one of the floodlights located at the west end of defendant's yard at Delphos, Ohio. If you find by a preponderance of the evidence that this floodlight when burning, would not aid a person working in that portion of the yard where Claude A. Bergfeld was working, then I charge you as a matter of law that its condition could not have been the proximate cause of the death of Mr. Bergfeld and you will give no further consideration to its condition in your deliberation.

"Special Request No. 2:

"It is undisputed in this case that prior to the injury to plaintiff's decedent on November 26, 1954, the defendant performed its switching operations in its Delphos yard in accordance with the uniform custom and practice prevailing in that yard and if you find by a preponderance of the evidence that the defendant was in the exercise of ordinary care in following this custom and practice under all the circumstances then and there existing, then the manner in which such switching operations were performed may not be considered by you as evidence of any negligence of the defendant.

"Special Request No. 3:

"It was the duty of Claude Bergfeld, in the exercise of due

care and prudence when working in the railroad yards at Delphos, Ohio, to use his faculties of sight and hearing to keep watch of the movements of cars in that yard. If you find by a preponderance of the evidence that Claude A. Bergfeld failed, in the exercise of such due care and prudence under all the circumstances, to use his faculties of sight and hearing to keep watch of the movements of the cars in that yard in time to avoid the accident and that such failure was the sole proximate cause of his injuries and death, then your verdict must be for the defendant.

"Special Request No. 4:

"If you find by a preponderance of the evidence that the defendant was negligent and that such negligence was a proximate cause of the death of plaintiff's decedent, Claude A. Bergfeld, then damages in this case are limited to compensation to his widow for the loss of the pecuniary benefits to her that would have resulted from his continued life, on the basis of their present cash value only, without considering any amount for grief, bereavement or loss of the society of the decedent. In estimating the present cash value of such pecuniary loss, you are entitled to consider the earnings of the decedent, his contributions to his widow, his health, industriousness and his life expectancy, although mortality and annuity tables are merely for guidance and do not furnish rules which you are required to follow. You are also to consider that all persons do not live to the age of expectancy, that all persons may not work during all years of their life so that the work life expectancy of Claude A. Bergfeld may have been less than the life expectancy shown by the tables and that the contributions to his widow might vary or diminish in the future.

"Special Request No. 5:

"This case is governed by the provisions of the Federal Employers' Liability Act. Under that statute the defendant is not an insurer of the safety of its employees and the mere fact that an accident occurred to Claude A. Bergfeld may not be considered by you as evidence of negligence on the part of the defendant. Unless, therefore, you find by a preponderance of the evidence that the defendant was negligent as alleged in the amended petition and that such negligence was in whole or

in part the proximate cause of the death of Mr. Bergfeld, your verdict must be for the defendant.

"Special Request No. 6:

"I charge you as a matter of law that by virtue of the Internal Revenue Act of 1954, any amount recovered in this case is exempt from federal income taxation and is not taxable to the decedent's estate."

The court sustained plaintiff's objections to requests numbers 2, 3 and 6, and gave requests numbers 1, 4 and 5.

The questions presented by defendant's assignments of error, and argued in its brief, are as follows:

1. Did the court err in the admission of evidence offered by the plaintiff and, particularly, the hearsay testimony of witness Link and the coroner's view slip, to which the defendant objected?

2. Did the court err in failing and refusing to charge on the issue of contributory negligence, thereby permitting an excessive verdict for the plaintiff?

3. Did the court err on the subject of damages by excluding evidence offered by the defendant with reference to the amount of deductions from the decedent's pay and by refusing to charge that a recovery herein is not subject to income tax?

4. Did the court err in its general charge in defining the issues involving the negligence of the defendant?

5. Is the judgment sustained by sufficient evidence?

These questions will be answered in the order as above set forth.

The defendant, in presenting its defense, called as a witness C. E. Link who, on cross-examination by plaintiff, testified as follows:

"Question. Just so we recall what it was you asked him, I put this question to you, sir. When you reached him did you not say to him 'Did that car we kicked back on number 1 hit you?' and didn't he answer, 'Yes, I didn't see it coming.'? Answer. Yes."

This testimony the trial court admitted over the objection of the defendant, under the doctrine of *res gestae*.

The witness, Link, was a member of the switching crew engaged in switching and rearranging the cars on inbound

train number 96 and making up a new train, 96 outbound. In this operation, decedent was, at the time, serving as a car checker. It was this witness, Link, who first found decedent after his injury which resulted in death. Link testified that some 10 or 11 to 14 minutes prior to finding the decedent, a gondola car had been kicked down the track where the decedent was found injured.

The question presented is whether the statement of the decedent was admissible under the *res gestae* rule.

Judge Bell, in his opinion in *Stough* v. *Industrial Commission,* 142 Ohio St., 446, 449, 52 N. E. (2d), 992, stated:

"No hard and fast rule has been or could be formulated by which it could be determined whether the declarations, exclamations or acts of a participant in or a witness to the transaction or event in question are admissible as part of the *res gestae.* In each case it must be determined from the surrounding circumstances whether such declaration, exclamation or act is admissible.

"Certain well defined tests have been pointed out in the adjudicated cases and by the text writers as guides in determining the admissibility of such declarations."

The nature of the doctrine of *res gestae* is stated in 32 Corpus Juris Secundum, 19, Section 403, as follows:

"The term '*res gestae*' may be defined as those circumstances which are the undesigned incidents of a particular litigated act and which are admissible when illustrative of such act."

Again, at page 21 it is stated:

"* * * The rule is, therefore, that where the making of a statement in controversy, or the doing of an act, assists in constituting the transaction or in proving per se a relevant fact, the declaration or act is competent. An examination of the cases will disclose, it has been stated, that the statement or declaration concerning which testimony is offered must, in order to be admissible as part of the *res gestae*, possess at least the following essential elements: (1) The statement or declaration must relate to the main event and must explain, elucidate, or in some manner characterize that event, see infra Sections 404-409. (2) It must be a natural declaration or statement

growing out of the event, and not a mere narrative of a past, completed affair, see infra Section 420. (3) It must be a statement of fact, and not the mere expression of an opinion, see infra Section 421. (4) It must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurence itself, and not the product of premeditation, reflection, or design, see infra Section 417. (5) While the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation.''

In the same text, at page 45, Section 417, the rule is stated as follows:

''In order for a declaration to be admissible as a part of the *res gestae*, it must be the spontaneous utterance of the mind while under the influence of the transaction, the test being whether the declaration was the facts talking through the party, or the party talking about the facts. The test has also been declared to be whether the statement was made under such circumstances of physical shock or nervous excitement as to preclude the likelihood of reflection and fabrication. The admission of such testimony is justified on the ground that the spontaneity and unreflected character of the statements are taken as sufficient safeguard of trustworthiness, and a suspicion of afterthought will prevent the reception of the statement.''

In 20 American Jurisprudence, 556, Section 663, the rule is stated as follows:

''The basis for the admission of declarations under the *res gestae* rule is the well-founded belief that statements made instinctively at the time of a specific transaction or event, without the opportunity for formulation of statements favorable to one's own cause, are likely to cast important light upon the matter in issue; as to such statements, the law creates a presumption of their truthfulness. The factual situation in each case will largely determine the extent to which the court will apply this rule. The marked trend of the decisions is to extend, rather than narrow, the scope of the doctrine admitting declarations as part of the *res gestae*. Whether specific statements are admissible as part of the *res gestae* is a matter within

the sound discretion of the trial court, the determination of which is ordinarily conclusive upon appeal, in the absence of a clear abuse of discretion."

The case of *Stough* v. *Industrial Commission, supra* (142 Ohio St., 446), is cited by the defendant in support of its contention that the question and answer complained of was improperly admitted as part of the *res gestae*. The facts in that case are so different from the case at bar as to be clearly distinguishable. However, the legal reasoning and the authorities cited in the *Stough case* sustain the ruling of the trial court in the case now under consideration. The chief objection of the defendant to the admission of this testimony is the fact that the statement made by the decedent was in response to a question asked him by the witness Link.

In *Hodge Drive-It-Yourself, Inc.,* v. *Cincinnati Gas & Electric Co.,* 90 Ohio App., 77, 96 N. E. (2d), 325, the testimony held admissible by the court as part of the *res gestae* was in response to a question asked of the decedent.

In a well considered opinion, which this court cites with approval, the court held that such testimony was properly admitted as part of the *res gestae*.

It is claimed also by the defendant that the court erred in admitting in evidence the so-called coroner's view slip.

That portion of the coroner's report which was admitted is as follows:

"In line with what was stipulated, may I read to the jury now from the record of the coroner's office of Allen County, Ohio, View slip, Case Number 4718: Name: Claude A. Bergfeld; Date and Time of Death: November 27, 1954, 3 p. m. Place of Death: St. Rita's Hospital; Sex: Male; Marital Status: Married; Occupation: yard clerk; Place of Employment: NKP RR; Color: white; Nativity: U. S. A.; Age: 59, Date of Birth, December 17, 1894; Place of Birth: Delphos, Ohio; Height: 5'5"; Weight: 220 pounds; Eyes: Gray; Hair: Gray; Mustache: None; Beard: None; Teeth: Upper Plate. Deceased was admitted to hospital for amputation of right leg and expired during surgery. Operation performed by Dr. Portman.

"Immediate Cause of Death: Coronary occlusion; Duration: Six hours due to traumatic amputation of right lower ex-

tremities. Signed by Coroner Richard J. Biery, D. C., 309 Steiner Building, Lima, Ohio; Date signed 1-4-55; under heading style Probable Cause of Death: Primary, coronary occlusion; secondary, traumatic amputation of right lower extremity."

It is with the last paragraph, that the defendant takes exception.

This evidence was offered by the plaintiff, pursuant to the provisions of Section 313.10, Revised Code, which reads as follows:

"The records of the coroner, made by himself or by anyone acting under his direction or supervision are public records, and such records, or transcripts, or photostatic copies thereof, certified by the coroner, shall be received as evidence in any criminal or civil court in this state, as to the facts contained in such records."

Defendant's position is that this testimony is not admissible under the above-quoted section because it does not contain facts, but only the opinion of the coroner which is based on hearsay. It is urged by the defendant that the admission of this evidence is contrary to the rule pronounced by our Supreme Court in *Carson* v. *Metropolitan Life Ins. Co.*, 156 Ohio St., 104, 100 N. E. (2d), 197, 28 A. L. R. (2d), 344. In the *Carson case* the court held that the certificate of death was prima facie evidence of the facts therein stated, but that mere opinions or conclusions do not constitute facts and are not admissible.

The evidence offered in the *Carson case* was a statement that the gunshot which caused the death was inflicted with suicidal intent. The court held such expression, without evidence to support it, was a mere opinion and did not constitute a fact as contemplated by the statute. Such statement, that the gunshot was inflicted with suicidal intent, was an opinion of the mental state of the decedent, not a statement of fact, and was inadmissible.

The plaintiff claims the coroner's report was admissible under the holding of the Supreme Court in the case of *Perry* v. *Industrial Commission*, 160 Ohio St., 520, 117 N. E. (2d), 34.

In the *Perry case* the court held that the statement in the death certificate, "immediate cause of death coronary sclero-

sis," was a statement of fact and not an opinion, and was admissible.

It is the opinion of this court that the testimony of the witness Link and the portion of the coroner's view slip to which the defendant takes exception were properly admitted in evidence by the trial court; that the portion objected to is not the statement of opinion, but is a statement of fact.

The defendant, in its answer, sets up the defense of contributory negligence on the part of the decedent, and, at the conclusion of the evidence and before argument, requested the court to charge on the issue of contributory negligence. The court refused to so charge, and its refusal to do so is one of defendant's assignments of error.

The Federal Employers' Liability Act, as amended in 1939, Section 53, Title 45, U. S. Code, provides as follows:

"In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee * * *"

By the enactment of the above-quoted section the fact that the employee may have been guilty of contributory negligence does not bar recovery, but the doctrine of comparative negligence is adopted, and the amount of such employee's recovery may be diminished in proportion to the amount of negligence attributable to him. It is true, therefore, that contributory negligence may be an issue in an action for injury or death under the Federal Employers' Liability Act, and, if the evidence presented on this issue warrants, the question of contributory negligence should be submitted to the jury under proper charge from the court.

While assumption of risk has been abolished and the question of contributory negligence retained, the dividing line between the two is very fine. It has been said that "contributory negligence involves some fault or breach of duty on the part of the employee, while assumption of risk does not; contribu-

tory negligence involves carelessness and failure to do something a reasonable prudent man would do.''

It has been observed that there is a certain amount of danger incident to many employments which ordinary prudence cannot always avoid.

As we have heretofore stated, contributory negligence may become an issue in an action for recovery under the Federal Employers' Liability Act, which would require a submission of the question to the jury, under proper charge by the court. However, the fact that the employee is charged with contributory negligence in defendant's answer is not sufficient to require a charge from the court on this question or a submission of the question to the jury. It is only " 'where the facts are in dispute, and the evidence in relation to them is that from which fair-minded men may draw different inferences,' the case should go to the jury." *Tiller, Exr.*, v. *Atlantic Coast Line Rd. Co.*, 318 U. S., 54, 68, 87 L. Ed., 610, 63 S. Ct., 444, 143 A. L. R., 967.

In the opinion of this court there is no evidence appearing in the record to support the charge of contributory negligence against the decedent and no facts appear from which fair-minded men might reach different conclusions on the question of contributory negligence. Such being our view, there is no issue of contributory negligence to be submitted to the jury or to require any charge upon the subject from the court.

Neither negligence nor contributory negligence is presumed. On the contrary, there is a presumption that one charged with negligence or contributory negligence was acting as a person of ordinary care and prudence would have acted under the same or similar circumstances. *Bush, Admr.*, v. *Harvey Transfer Co.*, 146 Ohio St., 657, 67 N. E. (2d), 851.

Contributory negligence of the decedent is an affirmative defense, and the burden of proving such negligence is upon the defendant.

We find nothing in the record that the decedent did anything or failed to do something which would tend to support the claim that he was guilty of contributory negligence.

Defendant, on cross-examination of plaintiff's actuary, attempted to introduce evidence of the amount of deductions

from decedent's gross earnings for railroad retirement and withholding tax. Objection was interposed by plaintiff to the introduction of this evidence, which objection was sustained by the court. Defendant claims that the court erred in excluding this evidence.

It is insisted by defendant that decedent's contribution to his widow was a percentage of his take-home pay and not of his gross earnings. Defendant relies upon the case of *Wether bee* v. *Elgin, Joliet & Eastern Ry. Co.*, 191 F. (2d), 302, 311, as supporting its position, claiming that the court reversed a judgment for plaintiff because the actuarial testimony was based on decedent's probable gross earnings and not on take-home pay. We do not so read that case. The error found by the court in respect to the actuarial witness was in the mortality tables used in his computation. We do not find anywhere in the court's decision that the computation of decedent's contribution should be based upon take-home pay and not gross earnings.

However, this question was definitely passed upon in the case of *Chicago & N. W. Ry. Co.* v. *Curl,* 178 F. (2d), 497. At page 502 it is stated:

"Appellant's assignment of error in the court's refusal to receive evidence offered by appellant raises the question whether the present value of appellee's probable future earnings was to be computed upon his average gross income as a railroad fireman, or upon his average income in that capacity after deductions for income tax, railroad retirement, and other miscellaneous deductions. The actuary who testified for appellee based his computations on appellee's average gross income for several years prior to the action, and the court refused to receive appellant's offer of proof of appellee's average net earnings after deductions. * * * We conclude that there was no prejudicial error in the court's refusal to accept appellant's offer of proof."

We hold that the court did not err in refusing to admit evidence with reference to the amount of decedent's take-home pay.

Before argument, the defendant requested the court to charge as follows:

"I charge you as a matter of law that by virtue of the Internal Revenue Act of 1954 any amount recovered in this case is exempt from federal income taxation and is not taxable to the decedent's estate."

The court refused to so charge, and such refusal, the defendant maintains, is reversible error.

The defendant cites the case of *Maus* v. *New York, Chicago & St. Louis Rd. Co.,* 165 Ohio St., 281, 135 N. E. (2d), 253, as supporting its claim of error, and the plaintiff, likewise, cites that case as supporting her claim that the request to charge was properly refused.

It cannot be questioned that the request to charge is a correct statement of law and that if it is pertinent to the issues and applicable to the particular state of facts to which it is intended to apply a mandatory duty devolves on the court to give it in the form tendered.

In the case at bar, as in the *Maus case,* the sole question before this court is whether the request to charge was pertinent to the issues and applicable to the state of facts proved. It is the opinion of this court that the request to charge is not pertinent to the issues and facts in the case at bar, and that the trial court committed no error in refusing to give the request to charge.

The defendant claims also that error was committed by the court in its general charge to the jury. It is contended that the effect of the court's charge is to hold the defendant to the standard of an insurer of decedent's safety, if the jury found the hazards were sufficiently great; that the charge imposed upon the defendant a higher degree of care in proportion to the hazard involved.

The court specifically charged the jury, both by way of special charges requested by the defendant and, also, in its general charge, that the defendant is not an insurer of the safety of its employees and that evidence of injury to plaintiff's decedent is not evidence of negligence on the part of the defendant.

The court specifically charged the jury that the care which the defendant owed its employees and the plaintiff's decedent was ordinary care, and that ordinary care is such care as a

prudent person would exercise under like or similar circumstances.

The portion of the charge complained of is as follows:

"As to the first issue, a continuous duty exists on the part of a carrier to use ordinary care in furnishing its employees with a reasonable safe place within which to work. The amount of caution required by the duty varies in direct proportion to the dangers involved in the work. To put the matter in another way, the amount of protection required of a railroad company in the exercise of ordinary care to furnish its employees with a safe place within which to work, increases or decreases as do the dangers that reasonably should be apprehended.

"You will keep in mind that customarily a person who works in a railroad yard has the duty of looking out for himself and that generally there is no duty upon members of the switch crew working in the yard to keep a lookout for other persons frequenting the yard; but also keep in mind, as the law as charged you, that as the hazards of the operation increase or decrease, so does the duty to use care not to injure anyone."

We are of the opinion that the charge of the court is a correct statement of the law. The amount of care or caution required by the rule does vary in direct proportion to the dangers involved; that is to say, the quantum or amount of care and caution varies with the circumstances, but not the degree of care, which remains constant, to wit, ordinary care.

The defendant insists that the verdict and judgment are against the weight of the evidence.

The jury's general verdict for the plaintiff was tested by interrogatories submitted to the jury, and the jury specifically found, by a special finding of fact, that defendant was guilty of negligence which proximately caused the death of decedent, and that the defendant's negligence consisted of the fact that the light in the railroad yard was out and that defendant failed to repair it.

It is deemed unnecessary by the court to review the evidence. In passing upon this assignment of error the court finds there is ample credible evidence in the record to support the verdict and judgment.

The court finds no prejudicial error in any of the particu-

lars set forth in the assignments of error and argued in the briefs. The judgment of the court below is affirmed.

*Judgment affirmed.*

QUATMAN, P. J., and YOUNGER, J., concur.