262 So.2d 752

**SEABOARD COAST LINE RAILROAD COMPANY, a Corporation**

v.

**Edd WHITEHEAD.**

**6 Div. 876.**

Supreme Court of Alabama.

May 25, 1972.

Edwin A. Strickland, and Peyton D. Bibb, Birmingham, for appellant.

Frank O. Burge, Jr., Birmingham, for appellee.

**MADDOX, Justice.**

This appeal is from a judgment in the Circuit Court of Jefferson County against appellant Seaboard Coast Line Railroad Company in the amount of $40,000, in favor of appellee, Edd Whitehead.

Whitehead claimed damages resulting from injuries he received to his right foot when he jumped from a boxcar where he was inspecting a load of baby food. The accident happened on a railroad siding at M. O. Carroll Grocery Company in Ozark.

The action was brought under the provisions of the Federal Employees Liability Act. Plaintiff alleged in count 1 that the railroad failed to furnish him with a reasonably safe place to perform his work and labor. This was the only count submitted to the jury.

At the time of the accident, Whitehead was the supervisor-agent for the railroad in Ozark. Part of his duties involved inspecting damage to freight shipped into Ozark on defendant's railroad. There was evidence that the boxcar he was inspecting contained a "test shipment."[1]

On the day of the accident, Whitehead went to the Carroll Grocery Company to inspect the shipment of baby food in accordance with instructions he had received from the Southern Railway System requesting him to "arrange positive inspec-

tion prior to and during the unloading, furnishing detailed report covering." The boxcar was located on a spur track adjacent to an unloading platform at Carroll Grocery Company. During the course of his survey and inspection of the shipment, the load "shifted" and Whitehead testified he pushed himself out and away from the car and jumped to the ground between the car and the platform. His right foot hit a blob of uneven concrete on the ground between the track and the unloading platform.

Appellant's primary argument on appeal is that the ground around the boxcar where plaintiff was injured, was not his work place and that the lower court erred in refusing to give its requested affirmative charge.

The rule of law applied in such cases has been previously stated by this Court. A railroad has a duty to use reasonable care to furnish to its employees a reasonably safe place to work. The duty becomes more imperative as the risk increases. The railroad is not relieved by the fact that the employee's work at the place in question is fleeting or infrequent. Bailey v. Central Vermont Ry., Inc., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444 (1943); Louisville & N R. R. Co. v. Cooke, 267 Ala. 424, 103 So.2d 791 (1958). This duty of an employer to furnish a reasonably safe place to work extends to those places where the employees are expressly or impliedly invited and permitted to use, or which the employer knows or ought to know they are accustomed to use. The question in any particular case whether the employer has discharged his duty in this respect is ordinarily one for the jury's determination. We conclude that a jury question was presented and that the affirmative charge with hypothesis in favor of the appellant was properly refused. Louisville & N. R. Co. v. Cooke, supra;

---

1. The load of baby food was shipped from North Carolina under the provisions of Rule 49, Uniform Freight Classification Permit No. 5399 (2nd Ext.), Uniform Classification Committee. Plaintiff was told to "arrange positive inspection prior to and during the unloading, furnishing detailed report covering."

Louisville & N R. R. Co. v. McElveen, 270 Ala. 600, 120 So.2d 884 (1960). The affirmative charge is properly given in F.E. L.A. cases only when there is a complete absence of probative facts to support plaintiff's claim of negligence on the part of the railroad. Birmingham Southern R. R. Co. v. Ball, 271 Ala. 563, 126 So.2d 206 (1961).

Appellant also claims the court erred in refusing to give charge 6, as follows:

"Charge #6. The Court charges the jury that if you are reasonably satisfied from the evidence that the plaintiff Edd Whitehead did not exercise reasonable care for his own safety in the manner in which he undertook to inspect the load of the railroad car in question as shown by the evidence, then the Court charges you that the plaintiff Edd Whitehead was himself guilty of negligence as the Court has defined that term to you, and the Court further charges you that if you are reasonably satisfied from the evidence that such negligence on the part of the plaintiff in that regard was the sole proximate cause of the plaintiff's losing his balance and jumping or falling from the car as shown by the evidence, then you cannot return a verdict for the plaintiff Edd Whitehead."

We note that the trial court orally charged the jury that " * * * If there be no negligence on the part of the defendant that causes it directly * * * there is no case against the defendant."

▅ Contributory negligence of the appellee was an issue in the case—not that it would bar recovery but would diminish the amount of damages which appellee should be awarded. No reversible error is shown by the trial court's refusal to give the sole proximate cause charge. See Birmingham Southern R. R. Co. v. Ball, supra. On the same basis there was no error in the trial court's refusal to give charge 8, which was also a sole proximate cause charge.

▅ Appellant also claims the verdict was excessive. At the time of trial plaintiff had a life expectancy of 25.31 years, and it would be 22.59 years from date of trial until plaintiff's 70th birthday. He had a permanent partial disability of 30% of the lower extremity or 12% of the body as a whole. His lost wages amounted to $3,025.30. There was evidence that plaintiff suffered severe disuse atrophy of the right lower limb. The plaintiff had earned the sum of $9,922.50 in wages and salary during 1967.

As this court said in Central of G. Ry. Co. v. Steed, 287 Ala. 64, 248 So.2d 110 (1971):

"No inflexible rule exists to guide a court in determining whether bias, prejudice or other improper motive is indicated because of the amount of a particular jury verdict. This court has said that the internal evidence, the verdict itself, in the light of the facts clearly disclosed by the evidence, usually furnishes the determining data. Alabama Gas Co. v. Jones, 244 Ala. 413, 13 So.2d 873 (1943)."

An examination of the record convinces us that the trial court did not commit reversible error in refusing to grant a new trial or order a remittitur.

Appellant further contends that the trial court committed reversible error in permitting an actuary to give his opinion relative to the earning capacity of money in the hands of a reasonable and prudent investor. The actuary testified:

"Q Based on that knowledge and your knowledge of investing funds and reasonably prudent investors funds, (sic) do you have an opinion as to what rate of interest a prudent investor of funds could obtain on invested funds over the period of time now until the gentleman is 70 years old, and how long would that be? Did you figure that?

"A It would be 22.59 years.

"Q All right. For that length of time, what would be—do you have an opinion as to what a reasonable prudent investor of funds could receive on invested funds for that length of time?

"A Yes, sir.

"Q What is that opinion?

Appellant's counsel objected to the question on the ground that the only admissible evidence would have been evidence of the earning capacity of money in the Birmingham locality at the highest rate of interest that could be obtained at the date of trial. After the objection was interposed, there was considerable discussion of the law between the trial judge and appellant's trial counsel. Appellant claims here that some of the statements made by trial judge, during this discussion, were prejudicial, but no objection was made to the statements of the trial judge by the appellant at the time of the trial. Neither was the trial judge requested to charge the jury on the measure of damages which could be awarded, taking into consideration the earning capacity of money. We have examined the court's oral charge on the question here posed and think the court adequately charged the jury in regard to the measurement of damages, taking into consideration the earning power of money. No objection was made by appellant's counsel to the court's oral charge, in any event.

From an examination of the actuary's entire testimony, we do not believe the spirit and intent of the law with respect to the earning capacity of money as set out in Mobile & O. R. R. Co. v. Williams, 219 Ala. 238, 121 So. 722 (1929); and Mobile & O. R. R. Co. v. Williams, 221 Ala. 402, 129 So. 60 (1930) was violated. The actuary testified that at *the time of trial* the plaintiff had a life expectancy of 22.59 years. The actuary was permitted to testify that, in his opinion, the rate of interest a prudent investor of funds could obtain during this period would be 4.5 to 5 percent. The actuary was then asked:

"Q Mr. Stiles, at my request have you made certain mathematical calculations, sir?

"A Yes, sir.

"Q What amount of money invested today at four and a half percent interest would give an income of $100.00 a month for the next 22.59 years until he is 70, so that at the end of 22.59 years, all of the principal and all of the interest at four and a half percent will be used up, but there would have been a monthly income of $100.00—$100.00 a month?

"A Assuming interest is compounded annually, it would require $17,142.27.

"Q Now, would you please, sir, give me the comparable figure at 5 percent?

"A The according figure at 5 percent is $16,390.14.

"Q Now, is there any simple mathematical way of correlating the $17,000 and the $16,000 figure if $200.00 a month were used?

"A Yes, sir.

"Q How would that be done?

"A To obtain it for $200.00 a month, you would simply double either one of those figures that you were working with."

In view of the subsequent question it would appear that the evidence before the jury contemplated the amount of money it would take currently invested at 4.5 and 5 percent interest, to compensate the plaintiff.

On cross-examination the defendant asked the actuary if higher rates of interest could not be obtained. He testified that 6 percent could be obtained on accounts for as long as two years. We have no way of knowing what rate of interest the jury used in arriving at its verdict, but we think no reversible error is shown in permitting the testimony of the actuary.

The judgment of the trial court is due to be affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD and BLOODWORTH, JJ., concur.