Edward L. FLANIGAN, Appellee,

v.

BURLINGTON NORTHERN INC., a corporation, Appellant.

No. 79–1703.

United States Court of Appeals, Eight Circuit.

Submitted March 12, 1980.

Decided Sept. 4, 1980.

Rehearing and Rehearing En Banc Denied Oct. 16, 1980.

Karl D. Dexheimer, Belleville, Ill., for appellant.

Frederic A. Bremseth, Minneapolis, Minn. (argued), John C. Boylan, and Russell A. Ingebritson, Minneapolis, Minn., and Rene E. Lusser, Lusser, Hughes & Lusser, St. Louis, Mo., on brief, for appellee.

Before LAY, Chief Judge, and HENLEY and McMILLIAN, Circuit Judges.

LAY, Chief Judge.

The Burlington Northern, Inc. (BN) appeals from a judgment entered on a jury verdict awarded for injuries to one of its employees incurred during the course of his employment. The action was brought under the Federal Employers' Liability Act (FELA), 53 Stat. 1404, 45 U.S.C. §§ 51–60 (1976).

Edward L. Flanigan was an inspector–carman for the Burlington Northern. BN had a safety rule which required an employee working on the track to place a blue flag on the end of the train or a blue light if it was dark. Its purpose was to prevent the train from being moved. When Flanigan was injured he was hooking up the air brake hoses on cars located on track 11. He had not put out a blue flag on track 11. It was dark and the engineer could not see anyone working on the train, nor could plaintiff see the cars being moved onto track 11. No warning whistle was sounded when the cars were sent onto the track. The train knocked Flanigan to the ground. He managed to kick his right leg out of the way but his left leg slipped on some loose coal and was run over by the train. It was necessary to amputate his left leg several inches above the knee.

At about the time Flanigan became a carman he viewed a slide presentation explaining the blue flag rule. He also indicated that he had some knowledge of the blue flag rule when he answered several questions concerning it on a 1969 job application to BN.

The evidence showed, however, that the blue flag rule was seldom utilized and enforced. Flanigan had been told by more experienced employees that blue flags were not used in the yard. He was never sup-

plied any blue flags nor was he told where he could get them. Flanigan testified that he had seen a blue flag used only once and that was on the "rip track" where repairs are made on defective cars. Another carman, who had worked on the yards for five years, testified that it was not a practice to use blue flags and that he had never seen a carman use a blue flag.

The jury awarded Flanigan a verdict of $500,000. After entry of judgment on the verdict the railroad appealed.

On appeal the railroad urges diverse errors allegedly occurring at trial. The most salient concern on appeal relates to the trial court's failure to instruct on the nontaxability of the damage award. Subsequent to the entry of judgment pending this appeal, the Supreme Court held in a wrongful death case brought under the FELA that it was prejudicial error for a trial court to fail to instruct that any award under the FELA was not subject to income tax. *Norfolk & Western Railway v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980). We discuss the issues raised seriatim.

*Sole Proximate Cause.*

The railroad first argues that Flanigan cannot recover because his conduct as a matter of law was the sole proximate cause of his injuries. The railroad relies on two blue flag rule cases. *Perry v. Missouri–Kansas–Texas Railroad*, 340 Mo. 1052, 104 S.W.2d 332 (1937); *Kamer v. Missouri–Kansas–Texas Railroad*, 326 Mo. 792, 32 S.W.2d 1075 (1930). Contrary to defendant's argument these decisions support the submission to the jury of the issue of proximate cause. In both cases the Supreme Court of Missou-

ri held that the issue of proximate cause was properly submitted to the jury and affirmed the verdicts. The court in *Perry* specifically stated:

> In view of the evidence set out, supra, as to the observance of the blue light rule, in defendant's yards when an employee was doing the character of work plaintiff was attempting to do when injured, *we cannot say, as a matter of law, that plaintiff's failure to put up the blue light was the sole proximate cause of his injury.*

*Perry v. Missouri–Kansas–Texas Railroad*, 340 Mo. 1052, 104 S.W.2d 332, 339 (1937) (emphasis added).

■ Flanigan, as did the plaintiffs in *Kamer* and *Perry*, offered evidence that the blue flag rule was not followed. Where the evidence shows that it was the custom of the railroad not to enforce a safety rule, the jury was entitled to consider the issue of proximate cause. As succinctly observed by the Fifth Circuit:

> The question as to the violation of the appellant's safety rule by the appellee was properly in this case. But whether it was a cause of the injury, and if so whether the sole or a contributing cause, and if the latter, the extent of the contribution were properly treated as questions for the jury.

*Illinois Central Railroad v. Andre*, 267 F.2d 372, 374 (5th Cir. 1959).

We hold that violation of the blue flag rule did not per se result in the employee being the sole proximate cause of his injuries. *See Boop v. Baltimore & Ohio Railroad*, 118 Ohio App. 171, 193 N.E.2d 714 (1963).[1]

---

1. Defendant also argues the district court erred in failing to give a sole proximate cause instruction. However, the cases cited by defendant merely hold that it is not error to give such an instruction. *Zappia v. Baltimore & O. R. R.*, 312 F.2d 62, 64 (6th Cir. 1963); *Jones v. Illinois Terminal R.R.*, 260 S.W.2d 487, 491 (Mo.1953). The court is not required to give such an instruction. *Louisville & N. R.R. v. Vickery*, 288 Ala. 555, 263 So.2d 656 (1972); *Seaboard Coast Line R.R. v. Whitehead*, 288 Ala. 505, 262 So.2d 752 (1972). In *Almendarez v. Atchison, T. & S. F. Ry.*, 426 F.2d 1095 (5th Cir. 1970) the court held:

We agree with the plaintiff that the railroad's theory to support its requested instruction is an attempt to engraft the common–law doctrine of sole proximate cause onto the Federal Employers' Liability Act. The standards of liability for negligence under the Act must not be confused with those under the common law. This proposition, in the light of a requested instruction on sole proximate cause which was granted, was well stated by Judge Brown in *Page v. St. Louis Southwestern Ry.*, 349 F.2d 820 (5th Cir. 1965):

"[O]rdinarily in FELA cases there is really no place for this issue in the jury submission

*Inadmissible Evidence.*

The railroad objected to the line of testimony concerning the present and possible expanded use of two–way radios in the yard. It urges the admission of such testimony is reversible error for several reasons: (1) an employer is not required to supply employees with the latest equipment provided those in use are reasonably safe and suitable; (2) the railroad is not required to provide alternative safety measures when blue flags are available; (3) the railroad is not negligent if the alternative safety device would not have assisted in preventing the injury; and (4) evidence inferring that Flanigan would have heard any instructions over a radio that would have notified him of the danger is speculative.

The railroad also sought to introduce a slide presentation explaining the blue flag rule, which plaintiff viewed prior to his injury. The district court sustained an objection to it on the grounds that it was inflammatory, and inaudible.

■■■ The admissibility of evidence in FELA cases is ordinarily left to the discretion of the trial court and the court will not be reversed unless it abused its discretion. *See, e. g., Lavender v. Kurn*, 327 U.S. 645, 654, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946); *Chicago & North Western Railway v. Green*, 164 F.2d 55, 62 (8th Cir. 1947); *Cardwell v. Chesapeake & Ohio Railway*, 504 F.2d 444, 448 (6th Cir. 1974); *Cf. Simpson v. Norwesco, Inc.*, 583 F.2d 1007, 1013 (8th Cir. 1978) (non–FELA case). The testimony concerning two–way radios was limited in scope. The plaintiff did not testify that he should have had a radio—other carmen did

say it might be helpful. The district court did not abuse its discretion in allowing this testimony into evidence. Similarly, once the blue flag rule was in evidence and the evidence showed that the plaintiff had viewed the slides, it was not abuse of discretion to rule out the evidence.

*Special Interrogatories.*

■■ The railroad argues the lower court committed error in failing to submit special interrogatories pursuant to Fed.R.Civ.P. 49(b) as requested. It has been observed: "The decision whether to use a general verdict accompanied by special interrogatories, as authorized by Rule 49(b), is similarly committed to the unreviewable discretion of the trial judge." 9 Wright & Miller, Federal Practice and Procedure: Civil § 2511, at 522 (1971). *See, e. g., Thomson v. Anderson*, 138 F.2d 272, 277 (8th Cir. 1943); *Turchio v. D/S A/S Den Norske Africa*, 509 F.2d 101, 104 (2d Cir. 1974); *Elston v. Morgan*, 440 F.2d 47, 49 (7th Cir. 1971); *Zaiko v. District of Columbia*, 427 F.2d 606, 609 (D.C. Cir. 1970). We find no error here.

*Excessive Verdict.*

The railroad argues that the jury verdict of $500,000 was excessive. If the verdict is to be overturned because of its size, it must be so large as to shock the judicial conscience. *See, e. g., Scoville v. Missouri Pacific Railroad*, 458 F.2d 639, 647 (8th Cir. 1972); *Chicago, Rock Island & Pacific Railroad v. Melcher*, 333 F.2d 996, 1001 (8th Cir. 1964). This court has stated:

[E]xcessiveness of a verdict is basically, and should be, a matter for the trial court

as such. * * * This effort to cross examine the jury— * * * —leads only to confusion and a proliferation of metaphysical terms scarcely understandable to the most astute scholar. * * *

"Of course the substantive law recognizes that if the negligence of the Employee is the sole cause of the injury or death, there is no liability. (citing cases). This is sometimes spoken of as the employee's contributory negligence being the sole proximate cause, but this is both an inaccurate use of the term 'contributory' and seems to be wholly unnecessary since a jury, honestly determining that

the injured employee's actions were the sole cause of injury, necessarily finds (either on a general charge or by special interrogatories) that no act of the railroad, even though found to be negligent, played any part in bringing about the injury. * * * We ought to avoid those practices which 'distract the jury's attention from the simple issues of whether the carrier was negligent and whether that negligence was the cause, in whole or in part, of the plaintiff's injury.'" 349 F.2d 826–827.

*Id.* at 1097 (footnote omitted).

which has had the benefit of hearing the testimony and of observing the demeanor of the witnesses and which knows the community and its standards; that this is a responsibility which, for better working of the judicial process and for other seemingly obvious reasons, is best placed upon its shoulders; and that we shall continue to consider review, as we have said before, not routinely and in every case, but only in those rare situations where we are pressed to conclude that there is "plain injustice" or a "monstrous" or "shocking" result.

*Soloman Dehydrating Co. v. Guyton*, 294 F.2d 439, 447–48 (8th Cir.), *cert. denied*, 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1961).

█ The evidence showed that since the amputation of his left leg, Flanigan has had severe and constant phantom pains, rash, infection, and misalignment of the hip. He also suffers from lower back pains, frequent falls, and excessive sweating. He can no longer garden, swim, hunt, dance or do maintenance work on his house. In view of the severity of plaintiff's injuries and the fact that he continues to have medical problems the verdict is not excessive.

*Instructions.*

1. *Plaintiff's Instructions.*

█ The railroad argues that it was error to give plaintiff's instruction on loss of earning capacity since there was no evidence to sustain it. The evidence demonstrates that plaintiff suffered permanent injuries that prevent him from working. *Illinois Central Railroad v. Staples*, 272 F.2d 829, 833 (8th Cir. 1959); *Quilter v. Elgin, Joliet & Eastern Railway*, 409 F.2d 338, 340 (7th Cir. 1969). The instruction was clearly proper.

The railroad also argues that it was error to give plaintiff's instruction on pain and suffering because it did not instruct the jury to reduce the award to present value. In *Chicago & North Western Railway v. Candler*, 283 F. 881 (8th Cir. 1922), this court held it was not error for the trial court to refuse to instruct the jury to reduce any award for pain and suffering to

present value. *Id.* at 884–85. Although there is sparse authority on this point, the other circuits have generally followed the lead of *Candler*. *See Taylor v. Denver & Rio Grande Western Railroad*, 438 F.2d 351, 352–53 (10th Cir. 1971); *Texas & Pacific Railway v. Buckles*, 232 F.2d 257, 264 (5th Cir. 1956); 3 Devitt & Blackmar, Federal Jury Practice & Instructions § 85.13, at 125 (Notes) (3d ed. 1977); Annot., 60 A.L.R.2d 1347, 1352–53 (1958). Recently, the Second Circuit held that future pain and suffering should be reduced to present value, *Chiarello v. Domenico Bus Service, Inc.*, 542 F.2d 883, 886 (2d Cir. 1976), however, we believe that the better reasoned position is that taken in *Candler*. The *Candler* court said:

The application of the present value rule by the jury in making up the amount of damages to be allowed for the deprivation of pecuniary benefits arising from probable future earnings is not only just, but feasible. It is feasible because the jury may from actual past earnings, with other factors in the problem proven, set opposite each year of the estimated life the sum which would probably be earned that year, and in death cases the probable pecuniary benefit to the party complaining or beneficially interested. These several sums can then be reduced to their present value. No such process is possible in estimating the amount to be allowed for pain and suffering, or for pain and inconvenience. In the matter of pain, suffering, or inconvenience, no books are kept, no inventories made, no balances struck.

Neither the plaintiff in the case nor any one else in the world has ever established a standard of value for these ills. The only proof ever received to guide the jury in determining the amount of the allowance they should make is, broadly stated, the nature and extent of the injury, its effect and results. They are instructed to allow a reasonable sum as compensation, and in determining what is reasonable under the evidence to be guided by their observation, experience and sense of fairness and right. At the best

the allowance is an estimated sum determined by the intelligence and conscience of the jury, and we are convinced that a jury would be much more likely to return a just verdict, considering the estimated life as one single period, than if it should attempt to reach a verdict by dividing the life into yearly periods, setting down yearly estimates, and then reducing the estimates to their present value. The arbitrariness and artificiality of such a method is so apparent that to require a jury to apply it would, we think, be an absurdity.

*Candler*, 283 F. at 884–85.

 The same amount of pain and suffering does not occur from year to year nor can the degree of pain and suffering that will occur in any year be quantified with any degree of certainty. Requiring the reduction of an award for pain and suffering to its present value would improperly allow a jury to infer that pain and suffering can be reduced to a precise arithmetic calculation. Therefore, we hold that the trial court properly denied the requested instruction.

### 2. *Defendant's Requested Instructions.*

#### (a) *Contributory Negligence.*

 The railroad objected to the district court's failure to give requested instructions concerning contributory negligence. The district court instructed the jury that, "Contributory negligence is fault on the part of a person injured, which cooperates in some degree with the negligence of another, and so helps to bring about the injury." The court's instruction was taken from 3 Devitt & Blackmar, Federal Jury Practice & Instructions § 94.16 (3d ed. 1977). Failure to give defendant's requested instruction further defining contributory negligence was not error since the district court's instruction adequately defined the term. *See King v. State Farm Life Insurance Co.*, 448 F.2d 597, 600 (8th Cir. 1971);

*Honebein v. McDonald*, 299 F.2d 493, 495–96 (8th Cir. 1962).

 The railroad also requested an instruction stating that it was the duty of plaintiff to be free from contributory negligence. Such an instruction is misleading. Contributory negligence is not a bar to recovery in an FELA case as defendant's instruction would have led the jury to believe. *Rogers v. Missouri Pacific Railway*, 352 U.S. 500, 506 & n.12, 77 S.Ct. 443, 448 & n.12, 1 L.Ed.2d 493 (1957); *Tiller v. Atlanta Coast Line Railroad*, 318 U.S. 54, 66–67, 63 S.Ct. 444, 450–451, 87 L.Ed. 610 (1943); *Chicago Great Western Railway v. Scovel*, 232 F.2d 952, 957 (8th Cir. 1956). Therefore, the district court properly denied the instruction.

#### (b) *Nontaxability of Jury Award.*

The railroad objected to the district court's failure to give the following instruction: "You are instructed that any award made to plaintiff as damages in this case, if any award is made, is not subject to state or federal income taxes, and you should not consider such taxes in fixing the amount of any award made plaintiff, if any you make."

In *Norfolk & Western Railway v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), the Supreme Court, in reviewing a wrongful death award under the FELA, found a gross disparity between the verdict and the pecuniary loss proven. It observed that the award was improperly inflated and that it was not "fanciful to suppose" that the jury believed that a large portion of the award would be payable in income taxes. It held that it was necessary that the jury be instructed that no damage award shall be subject to income tax.

The *Liepelt* holding thus overruled the great majority of federal and state cases which have generally found the instruction to be too speculative and conjectural or too difficult for a jury to follow.[2]

---

2. Too difficult or complex to follow. *See Johnson v. Penrod Drilling Co.*, 510 F.2d 234 (5th Cir. 1975); *Scruggs v. Chesapeake & O. Ry.*, 320 F.Supp. 1248 (W.D.Va. 1970); *Plourd v. Southern Pac. Transp. Co.*, 266 Or. 666, 513 P.2d 1140 (1973); *Hall v. Chicago & N.W. Ry.*,

In 1973, Judge Bright in *Rouse v. Chicago, Rock Island & Pacific Railroad*, 474 F.2d 1180 (8th Cir. 1973), reiterated this court's earlier view set out in *Raycraft v. Duluth, Missabe & Iron Range Railway*, 472 F.2d 27, 33 (8th Cir. 1973), stating:

> In view of the state of the law and the record in the instant case, this Court will not pass on the issue at the present time. Even if this panel were to adopt the instruction, this panel would do so only prospectively.

*Id.* at 1183.

And more recently, citing *Raycraft* and *Rouse*, speaking through Judge McMillian, this court indicated that although it favored an instruction on the nontaxability of damages, nonetheless "the position in this circuit is that such instructions are not required, and we have said any change in this position would be prospective only." *Taenzler v. Burlington Northern, Inc.*, 608 F.2d 796, 802 (8th Cir. 1979).

■ The fundamental question presented here is whether the Supreme Court's mandate in *Liepelt* requires us to apply this change of law in the present case when it was pending review at the time *Liepelt* was decided. We think it does.

The oft quoted rule of Mr. Chief Justice Marshall set out in *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801), governs here:

> It is in the general true that the province of an appellate court is only to enquire whether a judgment when rendered was erroneous or not. But if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. If the law be constitutional . . . I know of no court which can contest its obligation. It is true that in mere private cases between individuals, a court will and ought to struggle hard against a construction which will, by a retrospective operation, affect the rights of parties, but in great national concerns . . . the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside.

*Id.* at 110.

The rule has recently been approved and analyzed by the Supreme Court. *See Bradley v. School Board*, 416 U.S. 696, 710–21, 94 S.Ct. 2006, 2015–2021, 40 L.Ed.2d 476 (1974). Defendant BN argues the application of the rule here.

Flanigan, on the other hand, urges that we apply the test in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), that weighs relevant factors in deciding whether a new rule is retroactive.[3]

5 Ill.2d 135, 125 N.E.2d 77 (1955). Too speculative or conjectural. *See Scalise v. Central R.R. of N. J.*, 129 N.J.Super. 303, 323 A.2d 525 (1974); *Henninger v. Southern Pac. Co.*, 250 Cal.App.2d 872, 59 Cal.Rptr. 76 (1967). *Cf. Texas & N.O. R.R. v. Pool*, 263 S.W.2d 582 (Tex.Civ.App. 1953). Collateral matter. *See Raines v. New York Cent. R.R.*, 51 Ill.2d 428, 283 N.E.2d 230 (1972); *Bergfield v. New York, C. & St. L. R.R.*, 103 Ohio App. 87, 144 N.E.2d 483 (1956); *Hall v. Chicago & N.W. Ry.*, 5 Ill.2d 135, 125 N.E.2d 77 (1955). Raises more problems than it would solve. *See Combs v. Chicago, St. P., M & O Ry.*, 135 F.Supp. 750 (N.D. Iowa 1955); *Briggs v. Chicago Great W. Ry.*, 248 Minn. 418, 80 N.W.2d 625 (1957). Long standing practice need not be overruled. *See Rouse v. Chicago R.I. & P.R.R.*, 474 F.2d 1180 (8th Cir. 1973); *Blake v. Delaware & H. Ry.*, 484 F.2d 204 (2d Cir. 1973); *Greco v. Seaboard Coast Line R.R.*, 464 F.2d 496 (5th Cir. 1972);

*Payne v. Baltimore & O.R.R.*, 309 F.2d 546 (6th Cir. 1962); *Altemus v. Pennsylvania R.R.*, 32 F.R.D. 7 (D.Del.1963); *St. Louis S.W. Ry. v. Greene*, 552 S.W.2d 880 (Tex.Civ.App.1977); *Norfolk S. Ry. v. Rayburn*, 213 Va. 812, 195 S.E.2d 860 (1973); *Missouri–K–T– R.R. v. Miller*, 486 P.2d 630 (Okl.1971); *St. Johns River Terminal Co. v. Vaden*, 190 So.2d 40 (Fla.Ct. App.1966); *Bracy v. Great N. Ry.*, 136 Mont. 65, 343 P.2d 848 (1959); *Louisville & N. R. v. Mattingly*, 318 S.W.2d 844 (Ky.1958); *Maus v. New York, C. & St. L. Ry.*, 165 Ohio St. 281, 135 N.E.2d 253 (1956); *Wagner v. Illinois Cent. R.R.*, 7 Ill.App.2d 445, 129 N.E.2d 771 (1955).

3. In *Chevron* the Court observed:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, . . . or by deciding an issue of first impression

In a recent decision, the Missouri Court of Appeals applied the *Chevron* test to the identical question involved here. In *Ingle v. Illinois Central Gulf Railroad*, 603 S.W.2d 32 (Mo.Ct.App., 1980), the court of appeals applied *Liepelt* prospectively only. In doing so the court reasoned: (1) the trial judge in not giving the instruction was executing his duties according to existing law; (2) prior history of the rule shows the primary purpose underlying *Liepelt* was the court's decision to prevent excessive verdicts, which the *Ingle* verdict was not, thus, in *Ingle* retroactive application would not further the purpose of the rule nor would prospective application "retard" its operation; (3) the courts in the three cases relied upon by the Supreme Court in *Liepelt* prospectively applied the new rule with respect to the income tax instruction;[4] (4) applying *Liepelt* retroactively would produce substantial inequitable results to the plaintiff.

Notwithstanding the appeal of such rationale, we have serious doubts the doctrine of nonretroactivity is applicable here. In *Bradley* the Court reasoned:

> whose resolution was not clearly foreshadowed . . . . Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." . . . Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." . . .
> 404 U.S. at 106–07, 92 S.Ct. at 355 (citations omitted).

4. *Burlington Northern, Inc. v. Boxberger*, 529 F.2d 284, 297 (9th Cir. 1975); *Domeracki v. Humble Oil & Ref. Co.*, 443 F.2d 1245, 1251 (3d Cir. 1971); *Dempsey v. Thompson*, 363 Mo. 339, 251 S.W.2d 42 (1952).

5. *See Williams v. United States*, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971), where, in discussing *Linkletter v. Walker*, the Court observed:

> In *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), we declined to give complete retroactive effect to the exclusionary rule of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081

This Court in the past has recognized a distinction between the application of a change in the law that takes place while a case is on direct review, on the one hand, and its effect on a final judgment under collateral attack, on the other hand. *Linkletter v. Walker*, 381 U.S. 618, 627, 85 S.Ct. 1731, 1736, 14 L.Ed.2d 601 (1965). We are concerned here only with direct review.

416 U.S. at 710–11, 94 S.Ct. at 2016 (footnotes omitted).

Although it would appear *Bradley* makes a viable distinction between cases on direct review and collateral attack, other recent authority makes this assumption seem questionable.[5]

The *Bradley–Schooner Peggy* rule gives presumptive weight to applying the change of law retroactively *unless* manifest injustice would follow. On the other hand, the *Chevron* tests provide a more neutral, objective basis for analyzing whether a change in law should be applied only prospectively. When constitutional or procedural rules are involved the *Linkletter–Williams–Chevron* rule is clearly applicable.

> (1961). Relying on prior cases, we firmly rejected the idea that all new interpretations of the Constitution must be considered always to have been the law and that prior constructions to the contrary must always be ignored. Since that time, we have held to the course that there is no inflexible constitutional rule requiring in all circumstances either absolute retroactivity or complete prospectivity for decisions construing the broad language of the Bill of Rights. *Nor have we accepted as a dividing line the suggested distinction between cases on direct review and those arising on collateral attack.* Rather we have proceeded to "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.
> 401 U.S. at 651–52, 91 S.Ct. at 1151 (emphasis added) (footnotes omitted).
> See also our opinion in *Martin v. Wyrick*, 568 F.2d 583 (8th Cir. 1978), where on the strength of *Linkletter* and *Williams* we held the newly announced rule of *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), providing the right of self-representation, not applicable to cases pending appeal at the time *Faretta* was announced.

However, where there is a decisional change of state or federal substantive law between the time of trial and appeal, it would appear the *Schooner Peggy* doctrine is controlling. *See Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973); *Vandenbark v. Owens–Illinois Glass Co.*, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941). We conclude we are controlled by the language in *Bradley* relying on *Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), that "an appellate court must apply the law in effect at the time it renders its decision" unless there exists a "manifest injustice." Mr. Justice Blackmun expands this discussion by observing:

> Although the precise category of cases to which this exception applies has not been clearly delineated, the Court in *Schooner Peggy* suggested that such injustice could result "in mere private cases between individuals," and implored the courts to "struggle hard against a construction which will, by a retrospective operation, affect the rights of parties."

416 U.S. at 717, 94 S.Ct. at 2019.

The Court sets out three tests to be applied in determining the possible working of manifest injustice: (a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights. *Id.*

Although the present case may be viewed as a "routine private lawsuit" between disparate parties, i. e. an individual and a large corporate entity, we perceive by plaintiff's success in obtaining a verdict below, the disparity of the parties has not affected "the respective abilities of the parties adequately to present and protect their interests." *Id.* at 718, 94 S.Ct. at 2019. Secondly, the nature of their rights is such that at least under the prior views of this court, that it cannot be said that the intervening change "would infringe upon or deprive a person of a right that had matured or become unconditional." *Id.* at 720, 94 S.Ct. at 2020. Nor do we feel the nature of the impact of the change in law upon existing rights is significant. As the Supreme Court

reasoned in *Liepelt*, the plaintiff has never been able to prove loss of earnings solely on a gross earning basis. *Liepelt*, 100 S.Ct. at 757.

Assuming prejudicial error, plaintiff must, at the very worst, give up his verdict and have a new trial on damages only. We perceive inconvenience to the plaintiff but little injustice. Therefore, we conclude under *Schooner Peggy* and its progeny we must apply the substantive change in law as announced by *Liepelt*. In this instance we find that the rule in *Liepelt* requires us to say it was erroneous for the trial court to fail to instruct on the nontaxability of the award.

This does not, however, end our inquiry. The Supreme Court found in *Liepelt* the failure to give the cautionary instruction on nontaxation of the award was error. However, the Court also found error in failing to allow the defendant railroad to prove through its economist the projected net earnings after taxes. On this combination of error, the Court found the error to be prejudicial requiring a new trial.

Jury instructions are subject to the "harmless error" rule, *General Insurance Co. of America v. Hercules Construction Co.*, 385 F.2d 13, 24 (8th Cir. 1967), which requires reversal of a trial court judgment only if errors adversely affect the substantial rights of the complaining party. *Gilliam v. City of Omaha*, 524 F.2d 1013, 1015 (8th Cir. 1975); *Skogen v. Dow Chemical Co.*, 375 F.2d 692, 701 (8th Cir. 1967). Under this rule, it is also generally held that it is the appellant's burden to establish the prejudicial effect of the trial court's refusal to give a requested instruction. *General Insurance Co.*, 385 F.2d at 24.

In *McWeeney v. New York, New Haven & Hartford Railroad*, 282 F.2d 34 (2d Cir. 1960), the Second Circuit, in considering the prejudicial effect of a trial court's failure to give a nontaxability instruction, stated: "Before an appellate court should hold that failure to give such a cautionary instruction was reversible error, there ought to be evidence either that juries in general increase

recoveries on this account or that the particular jury did so." *Id.* at 39. The appellant in *McWeeney* failed to show any indication that the jury had increased the recovery so the court refused to vacate the award.[6]

This court in *Raycraft v. Duluth, Missabe & Iron Range Railway*, 472 F.2d 27 (8th Cir. 1973), indicated that the prejudicial effect of a failure to give a nontaxability instruction should be decided on the existence of evidence that the jury did, in fact, operate under a false impression of the tax laws.[7] *Id.* at 33 n.10.

The Supreme Court in *Liepelt* was also greatly concerned with whether the jury increased the award on the misconceived notion that any award would be taxable. The *Liepelt* jury awarded the plaintiff $775,000 whereas the plaintiff's own economist testified to lost earnings of only $302,-000. This large disparity between the evidence and the verdict greatly influenced the Supreme Court in deciding that the failure of the trial court to give a nontaxability instruction was prejudicial error.

*Liepelt* involved a wrongful death award and the plaintiff's proof concentrated on his loss of pecuniary earnings and contribution to his dependents. In the present case, in addition to being compensated for loss of future income that resulted from losing his leg, Flanigan was also entitled to compensation for his medical expenses and pain and suffering. The pain and suffering in this case was substantial. Plaintiff's amputation "started just under the knee or right below the knee and went right down the leg and severed the bone just above the ankle." Six wheels of the train passed over his leg. Plaintiff testified that when the train had come to a stop:

> My foot was still attached and I felt down and I could feel the blood was—my main vein was cut and there was blood squirting out of it, so I took my shirt off and made a tourniquet out of it and I tied it—there were sticks in the yard and I tied it down and put the sticks in it and pulled it.

After he made a tourniquet, Flanigan was in severe pain and had to crawl through the yard yelling for help. It was 45 minutes before he was discovered. Plaintiff testified that he continues to have considerable pain. Considering plaintiff's pain and suffering, his medical expenses as well as his loss of earning potential, the verdict does not indicate that the jury erroneously speculated that plaintiff's award would be subject to income tax.

In the present case the railroad was not precluded from offering relevant evidence of net earnings. Additionally, the defendant has failed to point out any evidence that the jury inflated its award on the erroneous belief that the award would be taxable. In fact, the evidence fully supports the jury's verdict and indicates that the jury was *not* operating under any misconceived notions of the tax laws. In the present case without evidence of an excessive verdict and considering all of the other relevant factors, we find the failure to give the instruction was not prejudicial to the rights of the parties. Under the present circumstances we hold the error was harmless.

Judgment affirmed.

---

**6.** The Second Circuit relied on a Michigan Law School study, Kalven, A Report on the Jury Project, Conference on the Aims and Methods of Legal Research, University of Michigan Law School, 167–68 (1957), to conclude that juries, in general, do not increase recoveries in the mistaken belief that they are subject to income tax. *McWeeney*, 282 F.2d at 39 & n.15. *See Rouse v. Chicago, R. I. & P. R. R.*, 474 F.2d 1180, 1183–84 n.3 (8th Cir. 1973).

**7.** The Third Circuit has reached a similar conclusion. *Domeracki v. Humble Oil & Ref. Co.*, 443 F.2d 1245, 1252 & n.15 (3d Cir. 1971).