**Monroe DOSS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 78–488C(2).

United States District Court, E. D. Missouri, E. D.

Dec. 18, 1980.

Martin T. Sigillito, Robert F. Godfrey, Fairview Heights, Ill., for plaintiff.

Bruce D. White, Asst. U. S. Atty., Dept. of Justice, St. Louis, Mo., for defendant.

## MEMORANDUM

NANGLE, District Judge.

This case is now before the Court upon remand from the United States Court of Appeals for the Eighth Circuit. On June 27, 1979, this Court, 630 F.Supp. 476, entered judgment in favor of plaintiff in the amount of ninety-five thousand dollars ($95,000.00). This Court found that the negligence of defendant's employees necessitated the eventual amputation of plaintiff's leg.

Plaintiff appealed, challenging the damage award as inadequate.[1] The Court of Appeals agreed and remanded to this Court for a new determination of damages. This Court was directed to "specify separate damages for loss of earnings, pain and suffering, and physical injury." *Doss v. United States of America*, 624 F.2d 1109 (8th Cir. 1980), slip op. at 6.

Very little evidence was presented at the initial trial of this case on the issue of damages. Liability was hotly contested, and the damages came almost as an after-

---

1. The government also appealed this Court's finding of negligence on its part. That appeal was subsequently dismissed, however.

thought. Upon remand, this Court gave the parties the opportunity to present additional evidence on the damage issue, but they declined to do so.

■ Plaintiff obviously has suffered and will continue to suffer a great deal of pain and suffering in connection with the amputation of his leg. As pointed out by the appellate court, it is a matter of common knowledge that there is always discomfort associated with using an artificial leg, and that an artificial leg does not work as well as a real one. *Doss,* slip op. at 6 n.3.

It is obviously impractical to attempt to quantify the factors which go into an award for pain and suffering. *Chicago & North Western Railway v. Chandler,* 283 F. 881 (8th Cir. 1922); *Flanigan v. Burlington Northern, Inc.,* 632 F.2d 880 (8th Cir. 1980). Suffice it to say that this Court, after considering the nature and extent of the injury, its effects and results, and the opinion of the appellate court, feels that an award of one hundred thousand dollars ($100,-000.00) is sufficient to compensate plaintiff for his pain and suffering. Though this award is on the "low side for pain and suffering", *Doss,* slip op. at 6, this Court does not feel that any more is justified. This award, in conjunction with those for loss of earnings and physical injury, will amply compensate plaintiff. His pain and suffering, though real, is minimal for the serious injury plaintiff has sustained.

The appellate court directed this Court to specify a separate award for physical injury. To a large extent, this award is included within the awards for pain and suffering and loss of earnings. Plaintiff is entitled to an award for having to go through life with only one leg, regardless of the actual effect on future earnings or the pain and suffering attendant with the injury. Plaintiff is fairly ambulatory at this time and his artificial leg is not readily apparent when he is walking short distances. For example, he moved rather well in the courtroom when taking the witness stand and leaving. He is, of course, severely limited in the normal activities of life in which he can now partic-

ipate. As with an award for pain and suffering, an award for physical injury is highly subjective. Considering the nature and extent of plaintiff's injury, plaintiff's adjustment to it, and the resultant limitation on plaintiff's activities, this Court feels one hundred thousand dollars ($100,000.00) is a reasonable award for plaintiff's physical injuries.

■ Lastly, this Court was directed to award damages for plaintiff's loss of earnings. In this regard very little evidence was offered. Plaintiff was forty-eight years of age at the time of his accident, and fifty-two years of age at present. During plaintiff's last year of employment he earned approximately sixty-seven hundred dollars ($6700.00). He testified he was earning "three something" per hour, which, when figured on a yearly basis would be near the sixty-seven hundred dollar figure. Finally, the evidence showed plaintiff to now be totally disabled. Missouri law governs the award of damages in this case, and under that law, the extent of harm to plaintiff's earning capacity is measured by the difference viewed as of the time of trial[2] between the value of plaintiff's services as they will be in view of the injury and as they would have been had there been no injury. *Coffman v. St. Louis-San Francisco Railway Company,* 378 S.W.2d 583 (Mo. 1964); *Sampson v. Missouri Pacific R. Co.,* 560 S.W.2d 573 (Mo. banc 1978). This difference is derived from reducing to present value the anticipated losses of earnings during the period of the prospective life the plaintiff would have had but for defendant's act. *Coffman,* supra.

In this case, the Court of Appeals has found as a fact that plaintiff is totally disabled. *Doss,* slip op. at 4. His future earnings, in light of the injury, are therefore zero. At the time of his injury, plaintiff was earning approximately sixty-seven hundred dollars ($6700.00) per year, working as a janitor in a home for the elderly run by Catholic nuns. Even this amount overstates his earning potential to some ex-

**2.** Rather than the "time of trial", the present will be used herein.

tent. Plaintiff had no steady work history and he seems to have been paid and given this job by sympathetic and kindly nuns more for his perceived need than for his ability.

Granting plaintiff the full amount of this income, however, the difference in his yearly earnings due to his injury is sixty-seven hundred dollars ($6700.00). Reducing to present value the anticipated loss of earnings during the period of plaintiff's anticipated life gives a value for loss of future earnings of approximately sixty-eight thousand dollars ($68,000.00). See §§ 442.530–442.550, R.S.Mo. (1969).

 Plaintiff argues that this award should be augmented to reflect the rate of inflation. Absolutely no evidence was adduced on this point or on the question of possible future deductions for taxes. This Court is not free to pick a number out of the air to represent its view of the future inflationary trends of the economy. No evidence was presented as to how inflation was to be considered. Though it is appropriate to consider the related aspect of possible future wage increases, *Taenzler v. Burlington Northern*, 608 F.2d 792 (8th Cir. 1979), no evidence was offered on this point either. In view of plaintiff's limited education and marginal employability even before the accident, this Court does not find it likely that wage increases would have been forthcoming. It is more likely that the future would have meant less income or even unemployment for plaintiff.

To be added to the above amount is plaintiff's lost earnings to date. At a rate of approximately sixty-seven hundred dollars ($6700.00) per year, plaintiff has lost approximately twenty-three thousand five hundred dollars ($23,500.00) in the three and one-half years since his injury.

 This Court previously allowed plaintiff's attorney a fee of nineteen thousand dollars ($19,000.00), which was the equivalent of one-fifth of the previous damage

award. See 28 U.S.C. § 2678. Since the damage award has been increased pursuant to the directions of the Court of Appeals, a higher award of attorney's fees is also justified. This Court does not feel plaintiff's attorney is entitled to an increase in his fee commensurate with the increase in the award, however. In fact, this Court has been concerned from the outset with the adequacy of plaintiff's representation. Considering all applicable factors, an award of thirty thousand dollars ($30,000.00) should amply compensate plaintiff's attorney for his efforts.

Plaintiff is a poor, uneducated man who could easily be misled. To protect him from any over-reaching, this Court will direct that plaintiff's attorney's fee be limited to the abovestated amount, that fee to be paid out of the judgment herein. Cf. *In re Kuflik*, 342 F.2d 421 (2d Cir. 1965). Furthermore, plaintiff's attorney will be ordered to file a verified statement, upon receipt of payment of the judgment herein, detailing the distribution of the funds received, including, but not limited to, details as to the net amount received by plaintiff and justification for any deductions taken in arriving at that figure.

 This Court has also observed that an assignment has been filed. According to this document, plaintiff has apparently assigned his entire interest in the judgment for eight thousand dollars ($8,000.00).[3] This assignment is patently improper. This Court can not condone such action. The defendant will be directed not to honor any alleged assignment of plaintiff's share of the judgment herein, except to the extent that it compensates the assignee only for moneys actually borrowed by plaintiff, plus a reasonable interest rate thereon.

---

**3.** Plaintiff's attorney was apparently intimately involved in this transaction (and, in fact, signed a similar document).