August A. MARYNIK, Respondent,

v.

BURLINGTON NORTHERN INC., Appellant.

No. 81–104.

Supreme Court of Minnesota.

March 26, 1982.

H. K. Bradford, Jr., Richard V. Wicka, Thomas W. Spence, and Michael Saeger, St. Paul, for appellant.

DeParcq, Anderson, Perl, Hunegs & Rudquist and Richard G. Hunegs, O. C. Adamson II, Minneapolis, for respondent.

SCOTT, Justice.

This case is the appeal of a verdict for plaintiff awarded in an action brought under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60 (1976). On November 4, 1980, the jury found for plaintiff-respondent August Marynik in the amount of $80,000 for an injury suffered in December 1976 and in the amount of $1,000 for an injury suffered in June 1978. This appeal is from the entries of judgment and the denial by the Hennepin County District Court of defendant-appellant's motion for a new trial.

Respondent was a carman in appellant's railroad car shops in Grand Forks, North Dakota. On December 2, 1976, respondent and another carman were sent to repair a gondola car in Shevlin, Minnesota, approximately 90 miles from Grand Forks. The weather on that day was very cold, with temperatures dropping as low as -20°F. As a result of nine to ten hours of work in the subzero temperatures, respondent suffered a sufficiently severe frostbite injury to two fingers of his right hand and one finger of his left hand that amputation of parts of those fingers was necessary.

Respondent testified at trial that the appellant's negligence was responsible for his initial frostbite injury. Respondent contended that he was sent to do a job in bitterly cold weather without equipment adequate to keep him warm, and that inadequate equipment and manpower forced him to spend an excessive amount of time outdoors without any reasonable means of combating the cold. Appellant, of course, disputed respondent's characterizations. Appellant contended that respondent could have turned the job down; that he had been told to dress warmly; that he could have taken a lunch break in town; and that there was room in the cab of the company truck to keep warm.

After returning to work following the amputations, respondent injured the fourth finger of his left hand while trying to open a jammed railroad car door. This injury occurred on June 6, 1978, and resulted in the loss of part of the ring finger.

Following the injuries to both hands, respondent became unable to perform some of the heavier duties normally performed by a carman. Though he was still capable of doing other carman duties, respondent's superiors directed him to perform more menial tasks such as sweeping floors and cleaning toilets. Respondent felt that, despite the fact that he continued to receive carman's wages, the deprivation of the opportunity to do more significant jobs was part of a broader process of harassment designed to encourage him to retire early. Respondent eventually chose to retire early, and did so on January 15, 1980, at the age of 63. Had respondent continued to work until he reached 65 years of age, he would have been entitled to an additional $65 per month from the railroad retirement pension. In an effort to demonstrate the incentive for his continuing to work until age 65, and in order to support his claim that he was harassed into early retirement, respondent introduced testimony concerning his family situation and financial status which was designed to prove that it was not in his best interest to elect early retirement.

Respondent initially was convinced by a claims agent for the appellant to settle his claim for his second injury. He accepted a $1,750 payment from appellant on September 9, 1978. Respondent alleged that the release he signed was invalid and that the

amount paid was offered and accepted before the parties to the settlement knew the true nature and extent of respondent's injury. The jury found for the respondent by general verdict on both causes of action.

The following legal issues are raised by this appeal:

(1) Whether it was reversible error for the trial court to prohibit the introduction of evidence of net wages and refuse to instruct the jury on the fact that a damages award would not be subject to taxation;

(2) Whether the jury's award of $80,000 damages for the first cause of action was excessive, the result of passion and prejudice and/or errors committed at trial; and

(3) Whether the court's instruction concerning climatic conditions was correct.

Of the three issues raised on appeal by appellant, Burlington Northern, only the first has any potential merit. That issue concerns the proper application of the United States Supreme Court's decision in *Norfolk & Western Railway v. Liepelt* (hereafter *Liepelt*), 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), to this case. The remaining issues are essentially sufficiency-of-the-evidence and abuse-of-discretion questions.

1. The United States Supreme Court in the *Liepelt* case held, first, that it was error to exclude evidence of the federal income taxes payable on the decedent's past and estimated future earnings; and, second, that it was error for the trial judge to refuse to instruct the jury that the award of damages would not be subject to income taxation. In *Liepelt*, a railroad employee had been fatally injured in a collision. The decedent was a 37-year-old man survived by a wife and four children. In her wrongful death action under the statute, the administratrix claimed pecuniary losses of $302,000 (discounted to present value) for the remaining 27 years of the decedent's expected working life. The jury awarded $775,000 to the estate. The expert for the railroad in

*Liepelt* estimated that the federal income taxes that would have been paid by the decedent during his working life would have amounted to $57,000.

■ In the instant case, the trial court did not permit the appellant to introduce the payroll records showing the *total deductions* from respondent's salary for the period 1967–80. The judge also refused to instruct the jury that the respondent would not have to pay taxes on the damages award. The trial court reasoned:

In the death case [*Liepelt*], as we discussed in chambers, there was no provision for pain and suffering,[1] and there is here. And I think the confusion to the jury, plus the relatively nominal amount that would be taken off or deducted because of federal taxes, would just make submission of that question to the jury too confusing, and I don't think that it was contemplated—I certainly don't think it was contemplated that any deduction be made in the pain and suffering area, and for that reason it will cause confusion, and I'm not going to give the instruction.

In our opinion the trial court's reading of the *Liepelt* decision was correct and was properly applied to this case.

The United States Supreme Court specifically states in *Liepelt*:

This is not to say, however, that introduction of such evidence [decedent's estimated after-tax earnings] must be permitted in every case. If the impact of future income tax in calculating the award would be *de minimis*, introduction of the evidence may cause more confusion than it is worth. Cf. Fed.Rule Evid. 403.

444 U.S. at 494 n.7, 100 S.Ct. at 758 n.7. In contrast to the *Liepelt* facts—assuming decedent was harassed into early retirement and therefore would have been earning wages until age 65—total withholding from

1. The trial judge was probably referring to the fact that damages in FELA wrongful death ac-

tions—such as *Liepelt*—are limited to pecuni-

respondent's paychecks[2] was estimated by appellant to be $9,000. This figure would have been subject to adjustment and debate concerning the reduction to present value of future wages, as the *Liepelt* court pointed out. 444 U.S. at 494, 100 S.Ct. at 758.[3]

◼ We next consider the trial court's decision not to give an instruction on the nontaxability of the damage award. We find the failure to give this instruction to be harmless error. The *Liepelt* plaintiff's damages contained a much larger lost-wages component than the *Marynik* claim, and lost wages represented the most substantial portion of the pecuniary loss recovery contemplated in a wrongful death action.[4] Therefore, this personal injury action may be distinguished from *Liepelt* in that pain and suffering damages are recoverable, and likely constituted the greatest portion of the $80,000 verdict. The Eighth Circuit emphasized this distinction between wrongful death and personal injury awards in the recent case of *Flanigan v. Burlington Northern Inc.*, 632 F.2d 880, 890 (8th Cir. 1980).

In *Flanigan*, the Eighth Circuit found the failure to instruct on the nontaxability of the damage award as per *Liepelt* to be harmless error:

> [T]he defendant has failed to point out any evidence that the jury inflated its award on the erroneous belief that the award would be taxable. In fact, the evidence fully supports the jury's verdict and indicates that the jury was *not* operating under any misconceived notions of the tax laws. In the present case without evidence of an excessive verdict and considering all of the other relevant factors, we find the failure to give the instruction

was not prejudicial to the rights of the parties. Under the present circumstances we hold the error was harmless.

*Id.* (emphasis in original).

As we state below, we do not find the verdict excessive, and there appears to have been no inflation of the award by the jury to account for tax consequences. Therefore, for reasons similar to those expressed by the *Flanigan* court, and because of the relatively small lost-wages component of the claim, we hold the error, if any, to be harmless.

◼ 2. The second issue raised by appellant is whether the damage award was excessive, the result of passion and prejudice and/or errors committed at trial. The first sub-issue raised by the appellant under the second issue is whether the jury's finding of $80,000 damages for the first cause of action bears a rational relationship to the facts. This argument has little persuasive force in light of the standard to be applied in reviewing jury determinations of damages in FELA cases. The *Flanigan* court, citing its own earlier decisions, said:

> [E]xcessiveness of a verdict is basically, and should be, a matter for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of the witnesses and which knows the community and its standards; that this is a responsibility which, for better working of the judicial process and for other seemingly obvious reasons, is best placed upon its shoulders; and that we shall continue to consider review, as we have said before, not routinely and in every case, but only in those rare situations where we are pressed to conclude that there is "plain

---

ary loss. *See Michigan C. R. R. v. Vreeland*, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417 (1913).

**2.** *Liepelt* only referred to federal taxes and it is arguable that only the effect of federal taxes (the most substantial tax) must be brought to the attention of the jury under that holding. Appellant sought to introduce the net take-home pay figures for the years 1967–80. That would include deductions for retirement payments, union dues and insurance as well as deductions for federal and state income taxes. In our opinion allowing such a broad submis-

sion is an unwarranted extension of the *Liepelt* holding.

**3.** *See supra* note 2 for other possible adjustments in the $9,000 estimate.

**4.** In *Liepelt*, pecuniary loss also could have included the "value of the guidance, instruction, and training that the decedent would have provided to his children." 444 U.S. at 492 n.4, 100 S.Ct. at 757 n.4.

injustice" or a "monstrous" or "shocking" result.

632 F.2d at 884–85 (quoting *Solomon Dehydrating Co. v. Guyton*, 294 F.2d 439, 447–48 (8th Cir.), *cert. denied*, 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1961)). The heavy burden placed on an appellant attempting to show that the verdict was excessive is not carried in this case.

■ We also find appellant's objection to the introduction of evidence concerning age, sex, and status of respondent's wife and children unfounded. Though this evidence is normally not relevant and is excluded because of its tendency to arouse sympathy, *see Pennsylvania Co. v. Roy*, 102 U.S. 451, 26 L.Ed. 141 (1880), it was directly relevant in this case. Respondent contended that he was harassed into early retirement. In an effort to demonstrate that he would not be disposed to early retirement, respondent introduced minimal evidence from which the jury could conclude that his family circumstances dictated that he make every effort to continue working. The evidence was not offered gratuitously to improperly prejudice the jury.

In an effort to give further credence to his claim of harassment, respondent offered evidence of a prior nervous breakdown. This evidence was properly admitted because it goes to the issue of respondent's susceptibility to, and tolerance of, harassment.

■ 3. The trial court gave the following instruction concerning the effect of weather on appellant's negligence: "A dangerous working condition resulting from climatic conditions is not, by itself, negligent failure on the part of the defendant to provide plaintiff with a reasonably safe place in which to work." Appellant's requested instruction was an expanded version of the above instruction. Appellant does not argue that the trial judge's instruction was a misstatement of the applicable law on this point, but instead argues that it was a "lukewarm and limited version of the instruction requested by defendant." In this case, the instruction is a correct statement of the law concerning climatic

conditions, *see generally Chicago & North Western Railway v. Rieger*, 326 F.2d 329, 332–33 (8th Cir. 1964).

Affirmed.